In the Matter of MARK DUNLEA et al., Respondents, v PETER GOLDMARK, as Director of the Budget for the State of New York, et al., Appellants.

Third Department, December 9, 1976

*Louis J. Lefkowitz, Attorney-General (William J. Kogan* and *Ruth Kessler Toch* of counsel), for appellants.

*Dennis A. Kaufman* and *Charles Bach, Jr.,* for respondents.

HERLIHY, J. The petitioner Mark Dunlea while conducting research relative to the New York State Commission on Cable Television on behalf of the petitioner New York Public Interest Research Group determined that access to certain budget examiner's files and work sheets for the 1975-1976 fiscal year would be useful. The appellants in their respective positions with the Division of the Budget refused such access upon the grounds that (1) such disclosure was not required by law; (2) the release of the information might interfere with the decision-making process of the agency; and (3) the request for "Budget Examiner's files" was too vague.

Special Term has found that the items sought are discoverable under the Freedom of Information Law (Public Officers Law, § 85 *et seq.)* and that the request was not too indefinite or vague.

The Legislature in section 85 of the Public Officers Law (all references hereinafter are to the Public Officers Law unless otherwise specified) has in pertinent part stated: "The people's right to know the process of government decision-making and the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.

"The legislature therefore declares that government is the public's business and that the public, individually and collectively and represented by a free news media, should have unimpaired access to the records of government."

Subdivision 1 of section 88 in conformity with the above-quoted declaration of the Legislature requires an agency to make available for public inspection *inter alia:*

"b. Those statements of policy and interpretations which have been adopted by the agency and any documents, memoranda, data or other materials constituting statistical or factual tabulations which led to the formulation thereof * * *

"d. internal or external audits and statistical or factual tabulations made by or for the agency".

Subdivision 7 of section 88 exempts certain information from disclosure, but none of these exemptions would be applicable herein.

The appellants contend that the work sheets and other items are not those which must be exhibited to the public because they are not "statistical or factual tabulations". It is not otherwise contended that the work sheets and files do not represent discoverable materials as described in subdivision 1 of section 88.

The Rules of the Executive Department (9 NYCRR 145.1) define the terms statistical and factual tabulation as follows: "As used in this paragraph, the term *statistical tabulation* means a collection or orderly presentation of numerical data logically arranged in columns and rows or graphically, and the term *factual tabulation* means a collection of statements of objective information logically arranged and reflecting objective reality, actual existence, or an actual occurrence. Opinions, policy options and recommendations do not constitute statistical or factual tabulations." This definition attempts to restrict factual tabulation to "objective information" or "objective reality". There is a sound basis for excluding documents which are mere opinions of policy options based upon the legislative history of section 88 and particularly the fact that the original section 88 as proposed in chapter 578 of the Laws of 1974 was amended before the Governor's approval by chapter 579 of the Laws of 1974 to include the language "constituting statistical or factual tabulations" in subdivision b of section 88 although it was present in the original form of subdivision d of that section. Indeed, the memorandum of Governor Wilson as to this legislation noted that there might be a need for continuing revision of the Freedom of Information Law. (See NY Legis Ann, 1974, p 392.)

It is readily apparent that the language "statistical or factual" tabulation was meant to be something other than an expression of opinion or naked argument for or against a certain position. The present record contains the form used for work sheets and it apparently was designed to accomplish a statistical and factual presentation of data primarily in tabulation form. In view of the broad policy of public access expressed in section 85 the work sheets have not been shown by the appellants as being not a record made available in section 88. While it is desirable to provide the public officers (employees) with the necessary privacy to make frank expres-

sions of opinion, such privacy may in the long run be more harmful than the goldfish bowl aspect. In any event, it is only supporting statistical and factual tabulations which are discoverable. In the context of the New York State Freedom of Information Law and particularly sections 85 and 88, the use of the word "statistical" or "factual" does not exclude such information merely because an opinion is later based thereon.

It should be observed that the Federal statutes relating to freedom of access to governmental information are not based upon a fundamental finding that the public should have unimpaired access to records. The mere fact that the document is a part of the "deliberative" process is irrelevant in New York State because section 88 clearly makes the back-up factual or statistical information to a final decision available to the public. This necessarily means that the deliberative process is to be a subject of examination although limited to tabulations. In particular, there is no statutory requirement that such data be limited to "objective" information and there is no apparent necessity for such a limitation. The appellants have not demonstrated that the work sheet is not to be public information.

It is well established that the description of the material sought as "budget examiner's file" is not too vague and readily identified material is sought. While there are allegations that the files contain some material which should be exempt, there has not been such a showing as to establish that the public should be denied access to the whole file. (See *Zuckerman v New York State Bd. of Parole,* 53 AD2d 405.) However, the appellants must be given the opportunity to establish specific exemptions, preferably by a sufficiently detailed affidavit to enable Special Term to determine the validity of the exemption claimed.

Assuming that in spite of the enactment of the Freedom of Information Law public agencies retain a common-law privilege to deny access to items such as those at issue based upon a showing that disclosure would be highly detrimental to the over-all public interest *(Cirale v 80 Pine St. Corp.,* 35 NY2d 113), there has not been any showing in the present case of such potential harm. The statutory language is mandatory and as to those items required to be disclosed the appellants must comply. If from experience it is determined that the statute needs "revision" it should be directed to the attention of the Legislature.

The judgment should be modified, on the law and the facts, by inserting a provision that the judgment is without prejudice to a motion by the respondents to restrict access to specific portions of the budget examiner's files other than work sheets, and, as so modified, affirmed, with costs to petitioners.

KOREMAN, P. J., KANE, MAHONEY and MAIN, JJ., concur.

Judgment modified, on the law and the facts, by inserting a provision that the judgment is without prejudice to a motion by the respondents to restrict access to specific portions of the budget examiner's files other than work sheets, and, as so modified, affirmed, with costs to petitioners.