In the Matter of THOMAS J. DELANEY, as Westchester County Sheriff, Appellant, v ALFRED B. DEL BELLO, as County Executive of the County of Westchester, et al., Respondents.

Second Department, May 1, 1978

## APPEARANCES OF COUNSEL

*Cerrato, Sweeney & Cohn (Julius W. Cohn* of counsel), for appellant.

*David N. Brainin, County Attorney (Jonathan Lovett* of counsel), for respondents.

## OPINION OF THE COURT

O'CONNOR, J.

The important subject matter of this appeal concerns the extent to which one agency may discover the budgetary estimates prepared by a separate agency, both functioning under the auspices of a County Executive and a Budget Director, prior to the adoption of a formal budget proposal by the County Executive for consideration by the county's Board of Legislators. We hold that neither a public official's right to know, nor former section 88 of the Public Officers Law (which was part of the Freedom of Information Law), authorizes access to the information sought within the context of the logical, carefully drafted provisions of article XIV of the Westchester County Charter (L 1937, ch 617, as amd). Accordingly, we affirm the dismissal of the petition.

### THE STATUTORY SCHEME

Article XIV of the Westchester County Charter provides the procedure for the preparation and adoption of the county budget. No later than the 10th day of September of each year, every department head must furnish to the Budget Director an estimate of the revenues and expenditures anticipated by his department (Westchester County Charter, § 75). The Budget Director then proceeds to review and investigate the submitted data and thereafter submits a recommendation to the County Executive (Charter, § 77). No later than November 15 of each year the County Executive must submit a proposed budget to the county board (Charter, § 78). Included with this submission is a budget message which outlines a fiscal policy for the county government (Charter, § 79). The proposed county budget, upon filing, may then be inspected by any person (Charter, § 79-a, added by L 1942, ch 698), and respondents concede that at that time the final estimates initially submitted by the department heads are fully discoverable and are, in fact, part of the public record. Within 20 days after the County Executive issues his proposed budget, the county board

conducts a public hearing, at which any person may be heard for or against the estimates (Charter, § 80). It is within the power of the board to revise or alter any proposal. A final budget must be adopted no later than December 27 (Charter, § 81).

### THE FACTS

Petitioner, the Sheriff of Westchester County, initiated this proceeding by an order to show cause, dated October 11, 1977. In his supporting affidavit he averred that prior to September 21, 1977, prompted by a desire to avoid submission of any requests for duplicative matters, he sought the budget estimate prepared by respondent Fulgenzi, Acting Chief of the Westchester County Parkway Police. He acted as late as he did because an addendum to his budget request was possible until the County Executive formally submitted a budget request on November 15. Fulgenzi rejected his request. Although he offered to answer any specific questions, Fulgenzi took the position that petitioner must wait until his budget request became a part of the public record before he could acquire the desired information. Petitioner, pursuant to both his right to know as a public official and to various sections of the Freedom of Information Law, requested that respondents be directed to provide him with the budget request of the Parkway Police.

Respondents took the position in their answering papers that, pursuant to acticle XIV of the County Charter, the material sought was not discoverable until November 15 and that it was the role of the Budget Director, not a department head, to discover and eliminate duplicative requests. Furthermore, respondents argued that it was the responsibility of the County Executive to formulate a budget and until he determined how he would act on the requests from his various department heads, the proposed budgets originally submitted by the department heads on September 10 were merely "opinions, policy options and recommendations" specifically exempted by 9 NYCRR 145.1 (2) from the relevant discovery provisions of the Freedom of Information Law.

An affidavit submitted by respondent Fulgenzi alleged, without subsequent challenge, that petitioner had never taken advantage of his offer to answer any specific questions. Additionally, there was a minimal chance of duplicative budget requests because the functions and duties of the two indepen-

dent agencies overlapped to only a slight degree. Furthermore, he considered his budget request to be merely a recommendation.

James Carney, the Budget Director, argued in his affidavit in opposition to the petition that a usable budgetary program does not emerge until his department and the County Executive, both gifted with the advantage of a broad overview of the proposals of the department heads, shape and mold the initial recommendations. Premature disclosure of budgetary requests would also erect serious practical barriers in preparing the budget. His entire staff worked seven days a week, putting in endless hours of overtime, between early September and late November or early December in order to formulate the budget. If premature disclosure of mere recommendations were to be permitted, political pressures generated by election politics would unavoidably be injected into the system and would prove to be detrimental to the preparation of an orderly, practical and efficient budget.

### THE DECISION AT SPECIAL TERM

Special Term dismissed the petition. The court ruled that as petitioner had drafted and submitted his budget proposal prior to seeking discovery of the proposal of the Parkway Police, there was obviously no need for him to know the information sought. The court further stated, however, that had a timely request been made, the claim of a need to know might have prevailed. The court further ruled that the information sought did not come within the terms of the Freedom of Information Law.

### THE FREEDOM OF INFORMATION LAW

Insofar as it is relevant to this appeal, former section 88 of the Public Officers Law (L 1974, ch 578, § 2) provided:

"1. Each agency, in accordance with its published rules, shall make available for public inspection and copying: * * *

"b. those statements of policy and interpretations which have been adopted by the agency and any documents, memoranda, data or other materials constituting statistical or factual tabulations which led to the formulation thereof * * *

"d. internal or external audits and statistical or factual tabulations made by or for the agency".

9 NYCRR 145.1 (2) provides, in part: "Opinions, policy

options and recommendations do not constitute statistical or factual tabulations."

We note at the outset that although the material sought to be discovered is already part of the public record, the importance of the questions raised and "the likeliness that they will recur" make it appropriate that we consider the merits of the case (see *Matter of Jones v Berman*, 37 NY2d 42, 57).

Petitioner first argues that in order to properly fulfill his duty to submit a budget, he has a need to know the budget request of the Parkway Police. This right exists separate and apart from any statutorily created right to know. It is assumed that petitioner's need stems from his alleged desire to prepare an intelligent estimate of his department's needs by avoiding duplication of requests from other departments.

This argument merits short shrift. It is undisputed that it is the function of the Budget Director and his staff to co-ordinate the multiple departmental budgetary requests and to eliminate duplication. Their broad overview makes them eminently more qualified than a department head to perform this function. As was also noted by Special Term, petitioner was quite able to prepare his budget without the discovery presently sought. Furthermore, it is undisputed that petitioner never sought to take advantage of Fulgenzi's generous offer to provide answers to any specific questions he might have. There is also nothing in the record to challenge Fulgenzi's assertion that the functions of the two departments only overlap to a minimal degree. Petitioner also had full access to the budgetary requests submitted by the individual departments in all previous years, and this would no doubt have been of great aid to one who sincerely sought guidance in the preparation of a budget. We must therefore conclude that petitioner had absolutely no need to know Fulgenzi's budget request, and whether he made his request prior to or after September 10 is totally irrelevant. The need to know and the right to know function independently of each other, however, and it is the right to know which we must next consider.

Petitioner argues that discovery is mandated by former section 88 (subd 1, pars b, d) of the Public Officers Law, which provided for disclosure of "statistical or factual tabulations". The budget proposals of each department head consist of identification of the various items budgeted and the amount of

each of them. As such, they fall squarely within the statutory language. Cited in support of this contention is *Matter of Dunlea v Goldmark* (54 AD2d 446, affd 43 NY2d 754). In *Dunlea* the court ruled that a budget examiner's files and work sheets were discoverable because they were statistical and factual tabulations.

At the time petitioner sought discovery, the proposed budget of the Parkway Police was potentially subject to thorough and extensive revision. The executive branch of the county government consists of several tiers of decision makers and the submitted budget of a department head falls squarely within the exception set forth in 9 NYCRR 145.1 (2) for "recommendations", which expressly do not constitute statistical or factual tabulations. Each department head functioning within the executive branch does, or at least should, appreciate the great importance the division he leads plays in the functioning of the government. If he did not attempt to maximize the resources to be made available to his department he would probably not be properly performing his functions. It is within this milieu of competing demands for limited resources that the responsibility of weighing the conflicting factors falls squarely upon the County Executive and his Budget Director. It is they who must set priorities and determine how to best serve the people they represent within the confines of the limited resources available. Being at a higher level of decision making than department heads, they must ultimately determine whether the initial budget submissions of September 10 become part and parcel of the November 15 proposed budget. The initial proposals may be altered almost beyond recognition.

In the light of the foregoing, *Dunlea* is readily distinguishable because it arose within the context of a budget which had already been finally adopted. As noted by the court in *Dunlea* (54 AD2d, at p 449), "it is only *supporting* statistical and factual tabulations which are discoverable" (emphasis supplied). Petitioner seeks discovery of alleged statistical and factual tabulations, but what he seeks to discover may ultimately support nothing but a void because of deletions made from the proposed budget by the County Executive. As has been noted by the Supreme Court of the United States, within the context of the Federal Freedom of Information Act (US Code, tit 5, § 552): "The public is only marginally concerned with reasons supporting a policy which an agency has re-

jected, or with reasons which might have supplied, but did not supply, the basis for a policy which was actually adopted on a different ground. In contrast, the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted" *(National Labor Relations Bd. v Sears, Roebuck & Co.,* 421 US 132, 152). Similarly, a budget proposal initially recommended to, and ultimately rejected by, the County Executive is not of vital concern to petitioner in his role as an individual member of society, and it is this rationale which fully justifies treating the information sought as a mere recommendation.

Finally, it is noted that merely because a recommendation is drafted in statistical form, a magical transformation does not occur and alter its nature. It remains only a recommendation.

Assuming, *arguendo,* the information sought comes within the statutory language of former section 88 of the Public Officers Law, it would still be exempt from discovery because it is privileged. The Freedom of Information Law did not abolish the common-law privilege for official information *(Cirale v 80 Pine St. Corp.,* 35 NY2d 113, 117, n 1). As was stated by the Court of Appeals in *Cirale* (pp 117-118):

"The hallmark of this privilege is that it is applicable when the public interest would be harmed if the material were to lose its cloak of confidentiality. * * *

"Once it is shown that disclosure would be more harmful to the interests of the government than the interests of the party seeking the information, the overall public interest on balance would then be better served by nondisclosure."

In our case the interests of the party seeking the information are minimal. As has already been noted, there is no present need to know. As an individual member of the public, petitioner's interest in obtaining the material is minimal because there may be little or no correlation between the information sought and the final budget proposal.

On the other hand, the interests of the government would suffer serious harm if departmental budget drafts were disclosed prior to submission to the Budget Director and the County Executive. In an era in which the public has been subjected to past abuses, one can only applaud the legislative declaration of intent (Public Officers Law, former § 85 [L 1974, ch 578, § 2]), which states: "The people's right to know the process of government decision-making and the documents

and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality." The excesses of the past, however, should not give way to counterbalancing excesses in the future which may seriously hamstring the reasonable and practical functioning of our democratic institutions.

The carefully considered and eminently reasonable provisions of the Westchester County Charter provide for an open and honest revelation of the governmental processes entailed in the adoption of the budget and further provided for the airing of public opinion prior to any final action. This process is fully harmonious with the legislative goals enunciated in the Freedom of Information Law. No dark and mysterious clouds of secrecy or confidentiality predominate in this atmosphere of openness and concern for the public's view.

Sensitivity to the public's right to know, however, should not and cannot be permitted to eclipse the realization that governmental functioning involves a healthy mixture of practicality. Too healthy a dose of disclosure could bring the wheels of government to a grinding halt. If proposed departmental budgets were immediately disclosed on September 10, there would be an unnecessary and undesirable input into the budgetary preparation process. As has already been noted, the County Executive and the Budget Director and his staff work at maximum capacity to co-ordinate the divergent alternatives and mold them into a fiscal policy. Unwanted input by those looking after their individual interests could, in a sense, overload the system. A great deal of attention may be focused upon a matter that will not ultimately be proposed to the county board by the County Executive. It is therefore not only reasonable, but eminently desirable, to limit disclosure under the Freedom of Information Law. This is even more so where full disclosure, and thus political accountability, is fully provided for in the Charter. The privilege for official information therefore establishes a compelling basis for rejecting petitioner's claim.

Petitioner's other contentions being without merit, the judgment appealed from should be affirmed.

RABIN, J. (dissenting). I vote to reverse. Disclosure of the budget estimate prepared by the head of the Westchester County Parkway Police is mandated by the Freedom of Infor-

mation Law (Public Officers Law, former § 88 [L 1974, ch 578]). This statute was enacted to help insure that government will be responsible and responsive to an informed citizenry. The legislative declaration of intent (Public Officers Law, former § 85) provided, in part, that: "The people's right to know the process of government decision-making and the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality." The legislative declaration of intent also stated that "[t]he more open a government is with its citizenry, the greater the understanding and participation of the public in government." Subdivision d of former section 88 provided that "statistical or factual tabulations made by or for the agency" are subject to public access. There can be no doubt that an agency's budget estimate constitutes a statistical tabulation within the scope of the statute *(Matter of Dunlea v Goldmark,* 54 AD2d 446, affd 43 NY2d 754). In *Dunlea,* work sheets and budget examiners' files in the possession of the State Budget Director were declared to be "statistical tabulations" which must be disclosed. Similarly, a budget estimate which represents an agency's final computation of its projected needs or "purposes" and their corresponding costs must also be deemed a "statistical tabulation" which is available for public inspection.

Special Term incorrectly distinguished *Dunlea (supra)* on the ground that that case arose after the budget had been adopted. The statute neither stated nor implied that "statistical tabulations" are discoverable only after the final agency document which they support is enacted or made public. To so hold would render nugatory the legislative purpose of providing for government accountability and public participation. Rather, if a document fits the description of a "statistical tabulation", it is discoverable under the Freedom of Information Law and the timing of the request for the document should not be determinative of whether it is subject to disclosure.

A budget estimate represents the particular agency's final projection of expenditures for the coming fiscal year. No longer tentative, it is a formal and definite request for appropriations which is sent out of the agency to the Budget Director, who heads a separate executive department. Having reached the most advanced stage of the agency's decision-making process, a budget estimate is not a mere recommenda-

tion, opinion or policy option which would be protected from disclosure by 9 NYCRR 145.1.

LATHAM, J. P., and GULOTTA, J., concur with O'CONNOR, J.; RABIN, J., dissents and votes to reverse the judgment and grant the petition, with an opinion.

Judgment of the Supreme Court, Westchester County, dated October 24, 1977, affirmed, without costs or disbursements.