■ Bonita Ingram, Individually and as Administratrix ·of the Estate of Richard Ingram, Deceased, Respondent-Appellant, v David Axelrod, as Commissioner of the Department of Health of the State of New York, et al., Appellants-Respondents. — Cross appeals from a judgment of the Supreme Court at Special Term (Klein, J.), entered May 13, 1981 in Albany County, which, in a proceeding pursuant to CPLR article 78, partially granted petition-

er's application for access to a report prepared by a New York State Department of Health employee. On April 2, 1980, petitioner's husband died shortly after being treated at the Benedict Memorial Hospital (the hospital) emergency room. Two weeks later, Mary Ann Tosh, an employee of respondent New York State Department of Health (DOH) conducted an investigation of the incident and prepared a report, dated April 24, 1980 (the report). Petitioner requested access to the report, under the Freedom of Information Act (Public Officers Law, art 6), but respondent denied her request on the ground that the report was exempt from disclosure as "intra-agency material" (Public Officers Law, § 87, subd 2, par [g], cl i). After exhausting her administrative remedies, petitioner instituted this proceeding. Special Term, following an *in camera* inspection of the report, partially granted her petition by ordering respondent to disclose pages 3-5 of the report as being "factual data" under 10 NYCRR 50.2 (b). Both parties have appealed. As one of the enumerated exceptions to the Freedom of Information Act, an agency may deny access to its records which are "intra-agency materials". The policy behind this exemption from disclosure is encouragement of the open exchange of ideas among government policymakers, while still maintaining broad public access to agency records (*Matter of Dunlea v Goldmark,* 54 AD2d 446, 448-449, affd 43 NY2d 754). However, it exempts as intra-agency materials only opinions and recommendations, not "statistical or factual tabulations or data" (Public Officers Law, § 87, subd 2, par [g], cl i). *"Factual tabulation"* is further defined by respondent DOH as "a collection of statements of objective information logically arranged and reflecting objective reality, actual existence or an actual occurrence" as distinguished from "[o]pinions, policy options and recommendations" (10 NYCRR 50.2 [b]). Petitioner here claims that she should be granted access to the entire report on the basis that it is factual data. Respondent, while admitting that the report contains factual data, contends that such data is so intertwined with subjective analysis and opinion as to make the entire report exempt. After reviewing the report *in camera* and applying to it the above statutory and regulatory criteria, we find that Special Term correctly held pages 3-5 ("Chronology of Events" and "Analysis of the Records") to be disclosable. These pages are clearly a "collection of statements of objective information logically arranged and reflecting objective reality". (10 NYCRR 50.2 [b].) Additionally, pages 7-11 (ambulance records, list of interviews, and reports of interviews) should be disclosed as "factual data". They also contain factual information upon which the agency relies (*Matter of Miracle Mile Assoc. v Yudelson,* 68 AD2d 176, 181, mot for lv to app den 48 NY2d 706). Respondents erroneously claim that an agency record necessarily is exempt if both factual data and opinion are intertwined in it; we have held that "[t]he mere fact that *some* of the data might be an estimate or a recommendation does not convert it into an expression of opinion" (*Matter of Polansky v Regan,* 81 AD2d 102, 104; emphasis added). Regardless, in the instant situation, we find these pages to be strictly factual and thus clearly disclosable. Moreover, certain other pages should be made accessible since, as they were neither prepared by nor for DOH (see *Matter of Miracle Mile Assoc. v Yudelson, supra,* p 181), they cannot be defined as inter or intra-agency materials, the preliminary standard which must be met before going on to decide whether such material is factual or advisory in nature and thus disclosable or exempt. The pages which should be disclosed on this basis are 14-22 (hospital records of the deceased[*]); 23-24 (policy of the hospital for transferring patients); 25-27 (selected pages from by-laws, rules and regulations of the hospital); 28 (spon-

---

[*] The hospital records of petitioner's deceased husband are not exempt as medical records protected from an "unwarranted invasion of * * * privacy" (Public Officers Law,

soring statement of a hospital staff physician, Sept. 27, 1979); 35-36 (ambulance records of the deceased). All these documents were prepared prior to DOH's inspection and report, for reasons having nothing to do with the report, and were merely collected by DOH's employee in the course of its investigation. Clearly the mere fact of being collected by a government agency and appended to its report is insufficient to transform a paper into "intra-agency material" (see *Matter of Miracle Mile Assoc. v Yudelson, supra*). Finally, petitioner should also have access to pages 31 and 32 (staffing pattern at the hospital, April 3-20, 1980), which were clearly a "statistical tabulation" (10 NYCRR 50.2 [a] [setting forth respondent's definition as "a collection or orderly presentation of numerical data logically arranged in columns" and again distinguishing "(o)pinions, policy options and recommendations"]). The remaining pages of the report contain opinions and recommendations and, therefore, are exempt from disclosure. Accordingly, the judgment should be modified by reversing so much of it as denied petitioner access to pages 7-11, 14-28, 31-32, and 35-36 of a report prepared by Mary Ann Tosh for respondent DOH, dated April 24, 1980. Respondent is directed promptly to disclose pages 3-5, 7-11, 14-28, 31-32 and 35-36 to petitioner. Judgment modified, on the law and the facts, by granting petitioner's application in accordance with the decision herein, and, as so modified, affirmed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.

§ 89, subd 2, par [b], cl ii; subd 2, par [c]). That statute obviously was not intended to include a situation such as this, where the patient involved is dead and his own estate is the party attempting to obtain his records.