OPINION OF THE COURT
John P. DiBlasi, J.
The central issue in this CPLR article 78 proceeding is whether the description of legal services provided to a local government is subject to disclosure pursuant to Public Officers Law article 6. Upon the facts involved herein, this court concludes that the information sought may be subject to disclosure, and that an in camera inspection of the records at issue is required.
FACTUAL BACKGROUND
The County of Orange (respondent) is currently involved in a Federal court environmental lawsuit (the landfill action) in which it is represented by outside counsel, LeBoeuf, Lamb, Greene & MacRae (the law firm). On or about January 10, 1995 Christopher Mele (Mele), a reporter for the Times Herald-Record (petitioner), requested information from respondent concerning the legal work performed by the law firm. Specifically, and pursuant to the "Freedom of Information Law”, Mele requested: "(1) the amount of money paid in 1994 to the law firm of LeBouef [sic], Lamb, Green & McRae [sic], for their legal service in representing the county in its landfill expansion lawsuit” and "(2) copies of invoices, bills, vouchers submitted to the county from the law firm justifying and itemizing the expenses for 1994”. Based upon a conversation between Richard B. Golden (Golden), the County Attorney for Orange County, and Mele, it was agreed that Mele would accept production of vouchers that were submitted by the law firm to respondent for payment, notwithstanding that these differed *349 from the detailed billing statements which the law firm submitted, and which, Golden asserted, contained confidential information.
Thereupon, Golden provided Mele with a list setting forth the number and date of, and the amount of money requested in, each voucher. On February 16, 1995 respondent’s record access officer sent Mele copies of the law firm’s vouchers.[1] While the vouchers contained certain information,[2] Mele was denied access to "an itemization of expenses incurred for” the legal services performed by the firm, on the ground that "disclosure of those specifics would be in violation of [the] attorney/client privilege” (exhibit B, petition). However, pursuant to further discussion between Mele and Golden, Mele submitted a further written request in which he sought "copies of the monthly vouchers submitted to the county by [the law firm] detailing the date the work that was done, description of the work done, amount of time it took, the party doing the work, and the related cost, plus the various disbursements”. This request was made by Mele with the ' ’understanding] that the descriptive details of work done w[ould] be redacted” (exhibit B, Golden affidavit).
On March 10, 1995, respondent sent Mele the requested monthly billing information (the monthly bills).[3] Nevertheless, as respondent concedes, it did not provide Mele with "the daily descriptions of the specific tasks” (the descriptive material), "including descriptions of issues researched, meetings and *350 conversations between attorney and client” (Golden affidavit para 6).
On March 2, 1995, petitioner appealed the denial of the request for the descriptive material. By letter dated March 15, 1995, Golden affirmed the decision of the record access officer denying Mele disclosure of that material, based upon three grounds, namely (1) the attorney-client privilege; (2) the attorney work product privilege; and (3) the privilege for intraagency material. Petitioner then commenced this CPLR article 78 proceeding, seeking a judgment directing (1) that the monthly bills be submitted to the court for in camera inspection and redaction of privileged matter; (2) that the redacted records be provided to petitioner; and (3) that attorneys’ fees be awarded to petitioner.
FREEDOM OF INFORMATION LAW
Public Officers Law § 87 (2) provides, insofar as relevant to this proceeding, that
"Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that:
"(a) are specifically exempted from disclosure by state or federal statute * * *
"(g) are inter-agency or intra-agency materials which are not:
"i. statistical or factual tabulations or data”.
This provision is part of article 6 of the Public Officers Law, which has been designated the "Freedom of Information Law” (FOIL). (Public Officers Law § 85.)
FOIL was enacted to make government more accountable to its citizens by granting statutory recognition of the public’s "right to know” more about government operations. (Matter of Weston v Sloan, 84 NY2d 462, 466 [1994].) In order to implement the broad purposes of FOIL, judicial interpretation of the statute has been liberal. (Matter of Weston v Sloan, supra; see, Matter of Capital Newspapers v Burns, 67 NY2d 562 [1986].) Thus, relying upon the specific language of the statute (see, Public Officers Law § 87 [2]), it has consistently been held that all records of an agency are presumptively available for public inspection and copying, unless they fall within one of the statutory exemptions. (Matter of Capital Newspapers v Burns, supra, 67 NY2d, at 566; Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 79-80 [1984].)
*351 To further the statute’s purpose of opening government operations to public oversight, the statutory exemptions are themselves to be construed narrowly. (Matter of Capital Newspapers v Burns, 67 NY2d, at 566, supra.) Additionally, since "[dull disclosure by public agencies is, under FOIL, a public right and in the public interest” (Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d, at 80, supra), a party seeking public records is not required to make "any showing of need, good faith or legitimate purpose” (supra). To the contrary, it has been repeatedly held that the public agency bears the burden of proving that requested information is exempt from disclosure. (Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d, at 80, supra; Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 566 [1984].) To meet this burden, the public agency must "demonstrat[e] that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access” (Matter of Capital Newspapers v Burns, 67 NY2d, at 566, supra; Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]).
In this proceeding, respondent contends that the descriptive material is exempt from disclosure on the same three grounds set forth in Golden’s letter denying petitioner’s administrative appeal. These grounds are addressed in the order argued by the parties.
ATTORNEY-CLIENT PRIVILEGE
Respondent first contends that the descriptive material is specifically exempted from disclosure by State statute (see, Public Officers Law § 87 [2] [a]). In particular, respondent urges that the material is protected by the attorney-client privilege. As codified in CPLR 4503, that privilege protects against compelled disclosure of "evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment”. Taking a very broad view of the term "communication”, respondent claims that all of the descriptive material is protected by the privilege. This court disagrees with respondent’s assertion.
The attorney-client privilege was born, and has continued to exist, in order to "encourage persons needing professional advice to disclose freely the facts in reference to which they seek advice, without fear that such facts will be made public to their disgrace or detriment by their attorney” (Hurlburt v Hurlburt, 128 NY 420, 424 [1891]; Matter of Jacqueline F., 47 *352 NY2d 215, 218 [1979]). Nevertheless, to the extent that it, like any privilege, creates an exception to the general rule that all persons having relevant personal knowledge of an issue must testify when called upon to do so in a legal proceeding, it "constitutes an ’obstacle’ to the truth-finding process, the invocation of which should be cautiously observed to ensure that its application is consistent with its purpose” (Matter of Jacqueline F., supra, 47 NY2d, at 219). Thus, it is beyond dispute that the privilege "is not limitless” (Matter of Priest v Hennessy, 51 NY2d 62, 68 [1980]).
Indeed, in order to successfully assert the privilege, a party must establish, inter alla, that the communication relates to a fact of which the attorney was informed, an opinion on law, or legal services, or assistance in some legal proceeding. (People v Belge, 59 AD2d 307, 309 [4th Dept 1977], quoting United States v United Shoe Mach. Corp., 89 F Supp 357, 358-359 [D Mass 1950].) The burden of proving all elements of the privilege rests upon the party asserting it. (Matter of Priest v Hennessy, supra, 51 NY2d, at 69; Matter of Gavin, 39 AD2d 626, 628 [3d Dept 1972].)
In this case, the parties’ sole point of contention is whether the descriptive material constitutes privileged communication. In this regard, respondent argues first, that as a general matter, the descriptive material is privileged communication between respondent and its attorneys in the landfill action, and second, that the existence of the ongoing landfill action protects all communications between respondent and its counsel.
While analysis of the confidential status of attorney-client communications is often addressed in terms of "communications by clients to their attorneys, CPLR 4503 speaks of communications 'between the attorney * * * and the client’ (CPLR 4503 [a]), and the privilege thus plainly extends as well to the attorney’s own communications to the client” (Rossi v Blue Cross & Blue Shield of Greater N. Y., 73 NY2d 588, 592 [1989]). Therefore, it is of no significance that the descriptive material was actually generated by respondent’s counsel and communicated, i.e., set forth in billing documents which were submitted with payment vouchers, to respondent, rather than being sent by respondent to the law firm.
However, what does have controlling effect, in the proceeding at bar, is the content of the communications. As to this aspect of the privilege issue, respondent relies upon several cases which are clearly distinguishable upon their facts, in that each deals with efforts to compel disclosure of documents *353 which bore directly upon the subject matter as to which the client was being represented, or which contained information traditionally considered to be privileged communication.
Thus, in Steele v New York State Dept. of Health (119 Misc 2d 963 [Sup Ct, Niagara County 1983]), the court denied a FOIL request for records including, inter alla, a memorandum from the attorney for respondent therein to respondent’s general counsel, which was based upon communications between respondent’s attorney and members of respondent’s staff, upon the court’s conclusion that "the background of the case and the surrounding circumstances contained in the record” supported an inference that the communications with respondent’s attorney were confidential. (Supra, at 966.) Similarly, in Ma-honey v Staffa (184 AD2d 886 [3d Dept 1992]), the Court held that letters exchanged between an investigation commission and its attorneys concerning the progress of litigation were protected from disclosure by the attorney-client privilege. Finally, in Matter of Austin v Purcell (103 AD2d 827, 828 [2d Dept 1984]), Justice O’Connor, in a concurring decision, concluded that a report prepared by counsel retained by the County of Nassau concerning the possibility of recovery in a civil lawsuit was exempt from FOIL disclosure under FOIL because of the attorney-client privilege.[4]
As is readily apparent from a review of these cases, the "communications” sought to be disclosed in each were of a type which either included the content of communications between counsel and its clients (Steele v New York State Dept. of Health, supra), or was a legal analysis of pending or proposed litigation for which counsel was retained by the client (Mahoney v Staffa, supra; Matter of Austin v Purcell, supra). To the extent that these cases stand for the proposition that such communications, rendered for the purpose of providing legal opinions or assistance in a legal proceeding, are not subject to disclosure (see, People v Belge, supra), they provide general guidance as to the types of communications which are plainly within the scope of the privilege. Nevertheless, they are of limited relevance to the issue before this court, since the descriptive material may very well not include any such information.
Contrary to the cases cited by respondent, the matter at bar involves a FOIL request for descriptions of the legal services provided on a daily basis by respondent’s outside counsel. Re *354 spondent attempts to place the. request in the posture of one which seeks details of meetings and conversations, and identification of specific legal issues researched. However, as is evident from petitioner’s March 2, 1995 FOIL request, what was sought, apart from the information heretofore provided, was "the description of the work done” (exhibit B, affidavit in opposition to petition). Thus, respondent’s position can be sustained only if such descriptions rise to the level of protected communications.
In this regard, the court recognizes that not all communications between attorney and client are privileged. (Matter of Priest v Hennessy, supra, 51 NY2d, at 68, 69.) In particular, "fee arrangements between attorney and client do not ordinarily constitute a confidential communication and, thus, are not privileged in the usual case” (supra). Indeed, "[a] communication concerning the fee to be paid has no direct relevance to the legal advice to be given”, but rather "[i]s a collateral matter which, unlike communications which relate to the subject matter of the attorney’s professional employment, is not privileged” (Matter of Priest v Hennessy, supra, 51 NY2d, at 69.)
Consequently, while billing statements which "are detailed in showing services, conversations, and conferences between counsel and others” are protected by the attorney-client privilege (Licensing Corp. v National Hockey League Players Assn., 153 Misc 2d 126, 127-128 [Sup Ct, NY County 1992]; see, De La Roche v De La Roche, 209 AD2d 157, 158-159 [1st Dept 1994]), no such privilege attaches to fee statements which do not provide "detailed accounts” of the legal services provided by counsel (Eisic Trading Corp. v Somerset Mar., 212 AD2d 451 [1st Dept 1995]; see, Colton v United States, 306 F2d 633 [2d Cir 1962], cert denied 371 US 951 [1963] [permitting limited inquiry into general nature of legal services provided]).
Seeking to avoid an in camera review of the monthly bills, necessary to determine whether or not the records involved herein are so detailed as to bar their disclosure, respondent additionally argues that the pendency of the litigation in which the services are being rendered bars disclosure of all communications between respondent and its counsel, relying upon Matter of Westchester Rockland Newspapers v Mosczydlowski (58 AD2d 234, 237 [2d Dept 1977]). Petitioner in that case sought production of a police report of an incident in which an individual died while incarcerated in a local jail. Respondent therein contested disclosure on the grounds that the report *355 was part of an investigatory file of a police department, and because it was material prepared for litigation. While the Court therein recognized that records prepared solely for pending litigation may not be subject to disclosure, contrary to the interpretation of respondent at bar, the Court did not declare a blanket rule of nondisclosure of all attorney-client communications during pending litigation. Indeed, the issue of attorney-client privilege was neither discussed by the Court, nor, apparently, raised by respondent therein.
Further, neither FOIL nor relevant case law supports respondent’s contention that the existence of pending litigation creates a complete bar to disclosure of communications, whether or not they constitute "confidential communications”. To the contrary, neither a member of the public, nor an adverse party,[5] forfeits all rights to disclosure of government records once a government agency becomes involved in litigation. (See, Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d, at 81, supra.) "If the Legislature had intended to exempt agencies involved in litigation from FOIL, it certainly could have so provided” (supra). As FOIL is presently written, there is no blanket exemption of communications between counsel and public agency clients involved in litigation.
Upon this analysis, the court concludes that respondent’s generalized claims of attorney-client privilege are not supported by either FOIL or case law interpreting it.[6] Moreover, respondent has failed to put forth a sufficiently particularized showing that all of the descriptive material on each of the law firm’s monthly bills come within the scope of the attorney-client privilege.
*356 As set forth above, the attorney-client privilege does not bar disclosure of all communications between counsel and client. (Matter of Jacqueline F., supra.) Only those communications which have as their purpose the obtaining by the client, or the providing by the attorney, of legal advice or assistance, come within the privilege. It is for that reason that communications between counsel and other third parties are not privileged. (See, Matter of King v Ashley, 179 NY 281 [1904]; Kenford Co. v County of Erie, 55 AD2d 466, 469 [4th Dept 1977].) Thus, for example, correspondence, conferences and telephone conversations between opposing parties, or opposing counsel, as well as other communications made in the presence of other third parties, are not within the scope of the privilege. (See, Matter of Stefano v C. P. Ward, Inc., 19 AD2d 473 [3d Dept 1963].)
Given the numerous types of communication between counsel and client, or counsel and third parties, that are not protected from disclosure, respondent was required to provide the court with sufficiently detailed information upon which to evaluate its claim of privilege. Instead, on this motion, respondent has only provided conclusory allegations that all of the descriptive material is privileged, which are wholly insufficient to meet its burden of proof under FOIL. (Church of Scientology v State of New York, 46 NY2d 906 [1979]; Matter of Niagara Envtl. Action v City of Niagara Falls, 100 AD2d 742 [4th Dept 1984], affd 63 NY2d 651 [1984].) Therefore, respondent must submit the records in issue to the court for in camera inspection so that the court may determine the extent, if any, to which the descriptive material is subject to disclosure.
WORK PRODUCT/MATERIALS PREPARED FOR LITIGATION
Respondent next argues that the descriptive material is protected by the attorney work product privilege, which protects such items as " 'interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs’ conducted, prepared or held by the attorney” (Kenford Co. v County of Erie, 55 AD2d, at 470, supra, quoting Hickman v Taylor, 329 US 495, 511 [1947]). Respondent contends that the codification of that privilege in CPLR 3101 (c), taken together with Public Officers Law § 87 (2) (a), renders the descriptive material nondiscoverable.
Although it is unclear whether material covered by CPLR 3101 (c) is exempt from disclosure under FOIL (see, Farbman & Sons v New York City Health & Hasps. Corp., supra, 62 NY2d, at 82; cf., Matter of Durio v MacKechnie, 202 AD2d 667 [2d *357 Dept 1994]; Matter of Burke v Yudelson, supra), the court will consider the work product privilege as a category of exempt material for the purposes of this proceeding (cf., Matter of Westchester Rockland Newspapers v Mosczydlowski, supra). Nevertheless, even assuming the applicability of the work product privilege to a FOIL request, the descriptive material is not necessarily exempt from disclosure.
Initially, it cannot be overlooked that "[n]ot every manifestation of a lawyer’s labors enjoys the absolute immunity of work product” (Hoffman v Ro-San Manor, 73 AD2d 207, 211 [1st Dept 1980]). Indeed, "[t]he exemption should be limited to those materials which are uniquely the product of a lawyer’s learning and professional skills, such as materials which reflect his legal research, analysis, conclusions, legal theory or strategy”. (Supra, at 211.)
Respondent’s denial of the FOIL request cannot be upheld unless the descriptive material is uniquely the product of the professional skills of respondent’s outside counsel. The preparation and submission of a bill for fees due and owing, not at all dependent on legal expertise, education or training, cannot be "attribute^] * * * to the unique skills of an attorney” (Brandman v Cross & Brown Co., 125 Misc 2d 185, 188 [Sup Ct, Kings County 1984]). Therefore, the attorney work product privilege does not serve as an absolute bar to disclosure of the descriptive material. (See, supra.)
Nevertheless, depending upon how much information is set forth in the descriptive material, a limited portion of that information may be protected from disclosure, either under the work product privilege, or the privilege for materials prepared for litigation, as codified in CPLR 3101 (d). In this regard, while respondent has captioned its second point in its memorandum of law as addressing the work product privilege, and has argued the point, albeit briefly, it has also cited Westchester Rockland Newspapers v Mosczydlowski (supra), which recognizes a FOIL exemption for material covered by CPLR 3101 (d). For that reason, the court will consider the applicability of that section, as well as CPLR 3101 (c).
While the court has not been presented with any of the billing records sought, the court understands that they may contain specific references to: legal issues researched, which bear upon the law firm’s theories of the landfill action; conferences with witnesses not yet identified and interviewed by respondent’s adversary in that lawsuit; and other legal services which were provided as part of counsel’s representation *358 of respondent in that ongoing legal action. (See, De La Roche v De La Roche, supra, 209 AD2d, at 158, 159.) Certainly, any such references to interviews, conversations or correspondence with particular individuals, prospective pleadings or motions, legal theories, or similar matters, may be protected either as work product or as material prepared for litigation, or both. (See, Warren v New York City Tr. Auth., 34 AD2d 749 [1st Dept 1970]; see also, Corcoran v Peat, Marwick, Mitchell & Co., 151 AD2d 443, 445 [1st Dept 1989].)
Although, as with the attorney-client claim, respondent has not offered sufficient information to support its refusal to disclose any of the descriptive material, respondent is entitled to have this court conduct an in camera review to see what portions, if any, of the material sought, may be exempt under FOIL. Indeed, the facts presented would support in camera review, even had such relief not been requested by petitioner. (See, Matter of Durio v MacKechnie, supra; cf., Matter of Niagara Envtl. Action v City of Niagara Falls, supra.)
INTRA-AGENCY MATERIALS
Respondent’s final ground for denying disclosure is that the monthly bills of the law firm are intra-agency materials, and as such, are exempt under FOIL. (Public Officers Law § 87 [2] [g].) This exemption has as its purpose providing "public officers (employees) with the necessary privacy to make frank expressions of opinion”. (See, Matter of Dunlea v Goldmark, 54 AD2d 446, 448-449 [3d Dept 1976], affd 43 NY2d 754 [1977]; Matter of Sea Crest Constr. Corp. v Stubing, 82 AD2d 546, 549 [2d Dept 1981].) As respondent correctly argues, documents which would, if prepared by employees of a public agency, be exempt from disclosure under FOIL, are similarly exempt as intra-agency materials when prepared by outside consultants. (Matter of XeroxCorp. v Town of Webster, 65 NY2d 131 [1985].)
Both parties to the proceeding agree that given the applicability of the exemption to outside consultants, such as the law firm, the determinative issue is whether the monthly bills, and by inclusion, the descriptive material, fit within the exception to nondisclosure where the materials are "statistical or factual tabulations or data” (Public Officers Law § 87 [2] [g] [i]). Respondent, without particularly justifying its position, asserts that the descriptive material does not come within the exception. Petitioner contends that any portions of the descriptive material which contain objective factual material must be disclosed.
*359 Although respondent would have the court narrowly interpret the exception for "factual tabulations or data” in its favor, it is, as set forth above, the statutory exemptions themselves that are to be narrowly construed. (Svaigsen v La Marre, 203 AD2d 32, 33 [1st Dept 1994].) Moreover, while the term "factual tabulations” is not defined in FOIL, our courts view it as meaning "statements of objective information, fundamentally distinct from subjective expressions of policy or opinion” (Matter of Weston v Sloan, 84 NY2d, at 467, supra). In its application, this definition has been held to include lists and reports of interviews (see, Ingram v Axelrod, 90 AD2d 568, 569 [3d Dept 1982]), as well as "facts and figures memorializing the expenditure of public funds” (Matter of Weston v Sloan, 84 NY2d 462, 467, supra). However, the term "factual tabulations” is not limited to purely objective information. Thus, even where some of the data reported may be a recommendation, that fact alone does not convert the data into an expression of opinion which is exempt from disclosure. (Matter of Polansky v Regan, 81 AD2d 102, 104 [3d Dept 1981].)
Applying these guidelines to the facts at bar, the court concludes that respondent has failed to establish that petitioner should be denied access to the descriptive material as a whole. While it is possible that some of the descriptive material may fall within the exempted category of expressions of opinion, respondent has failed to identify with any particularity those portions which are not subject to disclosure under Public Officers Law § 87 (2) (g). (See, Matter of Dunlea v Goldmark, 54 AD2d 449, supra.) Certainly, any information which merely reports an event or factual occurrence, such as a conference, telephone call, research, court appearance, or similar description of legal work, and which does not disclose opinions, recommendations or statements of legal strategy, will not be barred from disclosure under this exemption. (See, Ingram v Axelrod, supra.) Therefore, as with the other proffered grounds for nondisclosure, the court must conduct an in camera review of the records to determine if any of the descriptive material may be properly released to petitioner.
REDACTION/IN CAMERA REVIEW
Petitioner requests that the court conduct an in camera inspection of the monthly bills to determine what portions of the descriptive material may be subject to disclosure. Respondent does not specifically address this request, except to assert that "there is no need or requirement to engage in parsing the *360 sentences in the description of services to dissect the predicates, participles and pronouns in search of innocent words and phrases” (respondent’s mem of law, at 4 [emphasis added]). If respondent’s intention is to equate review and redaction with some overly technical and trivial process of evaluating information it seeks to protect from public disclosure, despite FOIL’S clearly stated purpose of opening the daily operations of government to public view, respondent is plainly wrong.
As correctly argued by petitioner, respondent may not deny access to the entirety of the descriptive material merely because some portion of it is exempt. (See, Matter of Zuckerman v New York State Bd. of Parole, 53 AD2d 405, 408 [3d Dept 1976].) Indeed, "the burden of establishing a blanket exemption covering all of the records requested is especially heavy”. (Matter of Buffalo Broadcasting Co. v New York State Dept. of Correctional Servs., 174 AD2d 212, 216 [3d Dept 1992]; see also, Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, supra.)
However, FOIL authorizes a public agency to redact exempt materials, and provide those portions that are not exempt, in response to a request for disclosure. (Public Officers Law § 87 [2] ["such agency may deny access to records or portions thereof’] [emphasis added]; see, Matter of Legal Aid Socy. v New York State Dept. of Social Servs., 195 AD2d 150, 153 [3d Dept 1993]). Courts addressing claims of partial exemption have not hesitated to permit redaction, in the first instance, by the public agency. (See, Matter of Wilson v Town of Islip, 179 AD2d 763, 764 [2d Dept 1992]; see also, Matter of Buffalo Broadcasting Co. v New York State Dept. of Correctional Servs., supra, 174 AD2d, at 215.)
Despite the alternative of redaction, respondent takes the position that all of the descriptive material sought is exempt. As stated above, such unsupported conclusions do not satisfy the heavy burden placed upon respondent by FOIL. (See, Matter of Buffalo Broadcasting Co. v New York State Dept. of Correctional Servs., supra, 174 AD2d, at 216 [conclusory assertions "unsupported by demonstration(s) from the (records) or evidentiary facts” are insufficient].) Moreover, even if respondent believes that total exemption is justified, it was incumbent on respondent "to articulate particularized and specific justification and, if necessary, submit the requested materials to the *361 court for in camera inspection” (Matter of Fink v Lefkowitz, 47 NY2d, at 571, supra).[7]
Because no tender of the records for review was made, the court directs that the monthly bills be produced for in camera inspection. Such in camera review will permit the court to evaluate the descriptive material against the three general grounds for exemption argued by respondent. This will provide protection to the material sought for release by petitioner, since the court can review the descriptive material to see how it is affected, if at all, by the privileges asserted, given the different, and at times, conflicting requirements, that must be satisfied by a party asserting the respective privileges. [8] Moreover, to permit respondent the opportunity to fully delineate its particular claims for redaction, respondent may, if it elects, submit any proposed deletions, along with the material produced in full (see, Matter of Polansky v Regan, supra, 81 AD2d, at 104).
attorneys’ fees
Finally, petitioner argues that it should be awarded attorneys’ fees in this proceeding because respondent lacked a reasonable basis to claim a total exemption of the descriptive material. An award of attorneys’ fees is authorized by FOIL where (1) the petitioner substantially prevails, (2) the records requested are of clearly significant interest to the general public, and (3) the agency lacks a reasonable legal basis for withholding the records (Public Officers Law § 89 [4] [c]).[9]
Notwithstanding petitioner’s claims in this proceeding, until the court has conducted its in camera inspection of the records at issue, no determination can be made as to these three elements which will support an award of attorneys’ fees. There *362 fore, this aspect of the petition shall be held in abeyance pending completion of the in camera review.
CONCLUSION
Upon the foregoing analysis, it is evident that the court cannot uphold respondent’s blanket denial of petitioner’s request for information. Therefore, to the extent that respondent seeks dismissal of the petition on the grounds that all of the descriptive material is exempt under Public Officers Law § 87 (2) (a), the attorney-client privilege and the attorney work product privilege, and under Public Officers Law § 87 (2) (g), the motion is denied, and the petition is granted, to the extent that it seeks in camera review.
Whereupon, it is ordered that the County of Orange shall, within 20 days from the date hereof, submit to the court for in camera inspection, unredacted copies of all monthly billing records submitted to it by the law firm of LeBoeuf, Lamb, Greene & MacRae in relation to the pending environmental lawsuit; and it is further ordered that the County may, contemporaneous with the submission of the aforesaid records, also submit proposed redacted copies of the monthly billing records for the consideration of the court.

. Actually, all of the vouchers were not sent to Mele at that time. However, Golden immediately corrected the oversight so thqf all vouchers were received by Mele.

. According to respondent, each voucher "itemizes and details” for each month: "(1) the subject matter of the charges, (2) the hourly rates of the attorneys and paralegals, (3) the monthly hours expended by each, (4) the monthly amount of the fees, (5) the monthly amount of the disbursements, (6) the total monthly request, (7) the date paid, (8) the County check number, (9) the responsible County Department, (10) the County budgetary line item account from which it was paid, and (11) the federal identification number of [the law firm].” (Golden affidavit para 4.)

. Respondent claims thesé contain: "(1) a general description of the matter billed, (2) the specific dates that services were performed, (3) who performed the services on each date, (4) the number of hours on each date by each attorney and paralegal, (5) the total amount of hours worked by the firm, (6) the total amount of hours worked by each attorney and paralegal, (7) a breakdown of the disbursements charged (photocopying, travel, etc.), (8) the fee rates for each attorney and paralegal, (9) the dollar amounts of the fees charged by each attorney, and (10) the total dollar amount of the fees charged by the firm”. (Golden affidavit para 6.)

. Notably, the majority did not find such protection for the document, although it did conclude that disclosure was barred under the exception for intra-agency material. (Matter of Austin v Purcell, supra, 103 AD2d, at 828.)

. Respondent states that petitioner has aligned itself with the interests of respondent’s adversary in the landfill action, and that petitioner "is aggressively seeking confidential information that will be shared with [the adversary] through the medium of the press” (Golden affidavit para 7). Assuming, arguendo, that these assertions are true, they bear no relevance to the court’s determination. Inasmuch as the adverse party could utilize FOIL directly to seek information from respondent (Farbman & Sons v New York City Health & Hosps. Corp., supra; Matter of Burke v Yudelson, 51 AD2d 673, 674 [4th Dept 1976]), certainly as a nonparty to that litigation, petitioner may base its disclosure demands upon the applicable FOIL provisions.

. Although research has not disclosed a reported New York case directly addressing this issue, as both parties herein have noted, in an unreported decision, Matter of Knapp v Board of Educ. (Sup Ct, Steuben County 1990, index No. 63341), the court therein similarly concluded that disclosure was required of the general nature of legal services rendered by a law firm to a local agency. As in the case at bar, the court rejected the efforts of respondents therein to rely upon "conclusory characterizations” to "justify a blanket denial of disclosure” (supra, at 3-4).

. Respondent’s "own labels are obviously not determinative of [the] work product [and other claims of exemption], and the generalized descriptions [offered by respondent] * * * do not convey the information and analysis necessary to decide whether a particular document should be immunized from disclosure” (see, Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 381 [1991]).

. For example, some material, albeit not protected from disclosure by the attorney-client privilege because it refers to interviews with third parties, may nevertheless be exempt as work product, or material made for the purposes of the pending environmental litigation. (Cf., Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d, at 379, supra.)

. Even where all of these requirements are met, the court maintains discretion in whether or not to award attorneys’ fees. (Matter of Powhida v City of Albany, 147 AD2d 236 [3d Dept 1989].)