627 A.2d 305

The **READING EAGLE COMPANY,**

v.

**COUNCIL OF the CITY OF READING, Warren H. Haggerty, Jr., Edward W. Leonardziak, Ronald E. DiBenedetto, Dawn A. Schutt and Mark J. Smolkowicz, Appellants.**

Commonwealth Court of Pennsylvania.

Argued March 30, 1993.

Decided June 24, 1993.

David A. Binder, for appellants.

David H. Roland, for appellee.

Before PALLADINO, and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Council of the City of Reading and the members of Council (collectively, City Council) appeal from the order of the Court of Common Pleas of Berks County (trial court) granting the Reading Eagle Company's (Reading Eagle) request for declaratory judgment and an injunction requiring City Council to make certain announcements concerning executive sessions under the Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286 (Sunshine Act).[1]

1. The Sunshine Act repealed and substantively replaced the Open Meeting Law, Act of July 19, 1974, P.L. 486, *formerly* 65 P.S. §§ 261–269.

Reading Eagle publishes two newspapers of general circulation in Berks County, the *Reading Eagle* and the *Reading Times*. At a public meeting of City Council on April 21, 1992, the City Council announced an executive session to discuss matters "of litigation". A reporter from *The Reading Eagle* objected to the closed meeting because the litigation matters were not announced with specificity but the executive session was held anyway.

Reading Eagle filed a complaint against City Council seeking a preliminary injunction; the complaint was later amended to request declaratory judgment and a permanent injunction. The city solicitor testified before the trial court that the subjects to be discussed were general hiring practices and policies, renewal of insurance coverage for volunteer fire company marching groups, and a vacant library position.[2] The city solicitor testified that the session was closed because of the possibility of lawsuits arising from the hiring practices and policies discussed.

 The trial court granted declaratory judgment and an injunction,[3] ordering that when announcing executive sessions, City Council must spell out in connection with existing litigation the names of the parties, the docket number of the case and the court in which it is filed. In connection with identifiable complaints or threatened litigation, the trial court ordered that City Council must state the nature of the complaint, but not the identity of the complainant. This appeal followed.[4]

The sole issue before this court is the specificity of the "reason" for holding the executive session which must be

**2.** Because no transcript was made of the proceedings, the parties filed stipulations summarizing the testimony before the trial court concerning the April 21, 1992 City Council meeting.

**3.** The parties agreed during the trial court's hearing that no violation of the Sunshine Act would be found based on the April 21 executive session.

**4.** Our scope of review is limited to determining whether the trial court committed an error of law or abused its discretion. *Mirror Printing Company, Inc. v. Altoona Area School Board,* 148 Pa.Commonwealth Ct. 168, 609 A.2d 917 (1992).

disclosed to the public under Section 8 of the Sunshine Act, 65 P.S. § 278. City Council contends that it must only restate the words of the statute, for example, "for litigation", when announcing an executive session. Reading Eagle, however, contends that the reason given for the executive session must be more specific, allowing the public to identify the matter to be discussed.

Section 8 of the Sunshine Act, 65 P.S. § 278, provides: (a) An agency may hold an executive session for one or more of the following reasons:

\* \* \* \* \* \*

(4) To consult with its attorney or other professional advisor *regarding information or strategy in connection with litigation or with issues on which identifiable complaints are expected to be filed.*

\* \* \* \* \* \*

(b) The executive session may be held during an open meeting, at the conclusion of an open meeting, or may be announced for a future time. The *reason for holding the executive session must be announced* at the open meeting occurring immediately prior or subsequent to the executive session. . . . (Emphasis added.)[5]

██ Section 8 of the Sunshine Act is an acknowledgement that the public would be better served in certain matters if the governing body had a private discussion of the matter prior to a public resolution. Litigation is one of those issues, because if knowledge of litigation strategy, of the amount of settlement offers or of potential claims became public, it would damage the municipality's ability to settle or defend those matters and all the citizens would bear the cost of that disclosure. Section 8, however, requires that even though it is in the public interest that certain matters be discussed in private, the

---

5. Other reasons for an executive session listed in Section 8 of the Sunshine Act, 65 P.S. § 278(a) are: employment or personnel matters, preparation for or negotiation of collective bargaining agreements, consideration of the purchase or lease of real property, and business to which a lawful privilege or confidentiality applies.

public has a right to know what matter is being addressed in those sessions. We must discern the General Assembly's specific intention in requiring that reasons be announced in order to determine how specific the disclosure to the public must be. *See* Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921.[6]

Other states have Open Meeting or Sunshine statutes similar to the Pennsylvania Sunshine Act in that they establish when and in what manner the public interest justifies a public agency in holding an executive session. In interpreting the statutes, the courts of those states have found that there is a requirement for specificity in announcing reasons for holding an executive session. *See Herald Publishing Company, Inc. v. Barnwell,* 291 S.C. 4, 351 S.E.2d 878 (1986) (approving a city council's announcement for executive session stating that it would hear a legal presentation by city attorneys on the EPA's action against its waste water treatment plant); *Jefferson County Board of Education v. The Courier–Journal,* 551 S.W.2d 25 (Ky.Ct.App.1977) (notice of a closed session should supply the general nature of the business to be considered and the reason for the secrecy).

Perhaps the best rationale for requiring specificity was given by the Supreme Court of Mississippi in *Hinds County Board of Supervisors v. Common Cause of Mississippi,* 551 So.2d 107 (Miss.1989). In that case, the Supreme Court of Mississippi enjoined a county board from holding executive sessions to discuss litigation unless it identified the litigation "by court, style and number of such action". *Id.* at 128. In its opinion, the court stated that specificity was necessary because:

> The reason given, of course, must be meaningful. It must be more than some generalized term which in reality tells the public nothing. To simply say "personnel matters" or "litigation" tells nothing. The reason stated must be of sufficient specificity to inform those present that there is, in

**6.** "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921.

reality, a specific, discrete matter or area which the board had determined should be discussed in executive session. . . . When a board chairman tells a citizen he may not hear the board discuss certain business, he is taking liberties with the rights of that citizen, and the reason given for this interference must be genuine and meaningful, and one the citizen can understand. To permit generalized fluff would frustrate the very purpose of the Act.

*Id.*, 551 So.2d at 111.[7]

■ By requiring that the executive session can only be held when reasons are given, the General Assembly intended that the public be able to determine from the reason given whether they are being properly excluded from the session. We agree with the rationale stated in *Hinds County* that in order to effectuate the purpose of requiring that reasons be given, the reasons stated by the public agency must be specific, indicating a real, discrete matter that is best addressed in private.[8] The trial court's order requires only what is necessary to carry out that intention.

■ City Council contends that this outcome is unduly burdensome. Even if we agreed with City Council's proposi-

7. The relevant part of the Mississippi Open Meetings Act, Miss.Code Ann. § 25-41-7(3), Ch. 481, Laws 1975, is essentially identical to our Sunshine Act, stating only that "[t]he reason for holding such an executive session shall be stated in an open meeting. . . .".

8. This reading of Section 8 is indicated by the General Assembly's findings and stated purpose in enacting the Sunshine Act as a whole:

(a) Findings.—The General Assembly finds that the right of the public to be present at all meetings of the agencies and to witness the deliberation, policy formulation and decisionmaking of agencies is vital to the enhancement and proper functioning of the democratic process, and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society.

(b) Declarations.—The General Assembly hereby declares it to be the public policy of this Commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon as provided in this act.

Section 2 of the Sunshine Act, 65 P.S. § 272. *See Babac v. Pennsylvania Milk Marketing Board*, 531 Pa. 391, 392, n. 1, 613 A.2d 551, 552, n. 1 (1992).

tion, the General Assembly, based on its findings that public decision-making is vital to the functioning of the democratic process, has chosen to impose this burden on public agencies. In any event, if it becomes evident that the General Assembly made government "too open" to the extent that it damages the public interest, City Council should direct that argument to the General Assembly rather than to the courts. Accordingly, because the trial court did not make an error of law or abuse its discretion, we affirm the order of the trial court.[9]

## ORDER

AND NOW, this 24th day of June, 1993, the order of the Court of Common Pleas of Berks County, dated June 5, 1992, No. 6280 Equity 1992, is affirmed.

---

**9.** As to the identifiable complaints or threatened litigation, we agree with the trial court and Reading Eagle that the general nature of the complaint has to be announced when an executive session is called to discuss it. That level of identification is appropriate because the action has not been or may not be filed. By announcing the general reason for the executive session, e.g., "to discuss a threatened personal injury suit", the public is informed that there is a legitimate reason for the executive session without adversely affecting the City Council's ability to protect the public's interest.