**Joseph GARVEY**

v.

**NATIONAL GRANGE MUTUAL INSURANCE COMPANY.**

Civil Action No. 95–0019.

United States District Court, E.D. Pennsylvania.

April 5, 1996.

Kathleen A. Kerrigan, John J. Kerrigan, Jr., Stuckert & Yates, Newtown, PA, for Plaintiff.

Joseph F. McNulty, Jr., Michael R. Nelson, Kenneth T. Levine, Post and Schell, P.C., Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are the defendant's Joint Motion for Reconsideration and for Protective Order, the plaintiff's response thereto, and supplemental briefs by both the defendant and plaintiff.

## I. BACKGROUND

Plaintiff, Joseph Garvey ("Garvey"), was the owner of a deli and catering business called Creative Cuisine in Feasterville, Pennsylvania. The property was insured by a policy issued by defendant National Grange Mutual Insurance Company ("National Grange"). On June 29, 1993, a fire destroyed the contents of the business. After an investigation, defendant denied coverage of plaintiff's claim.

Plaintiff then instituted this action.[1] By Order dated March 15, 1995, this Court dismissed three counts of plaintiff's complaint, leaving remaining claims for breach of contract, bad faith, and deceit. Defendant then filed its answer with affirmative defenses and counterclaims. The three counterclaims are: breach of duty of good faith and fair dealing (Count I); fraud and deceit (Count II); and violation of the Insurance Fraud Act (Count III). By Order dated August 1, 1995, this Court denied the plaintiff's motion to dismiss or strike all three counts of the counterclaim.

During the discovery period in this matter, the parties could not resolve a dispute regarding documents in the defendant's possession. The plaintiff had requested that the defendant produce all of the documents in its underwriting file, claims file and all insurance manuals pertaining to in-house underwriting and claims adjustment procedures. The defendant apparently produced most of the requested documents, but withheld certain documents that it claimed were not discoverable. Subsequently, the plaintiff filed a

---

1. This action was originally filed in State court, but was subsequently removed to this Court based upon diversity jurisdiction.

motion for an order compelling the defendant to produce the remaining documents and the defendant filed a motion for an order protecting same. On October 10, 1995, this Court entered an Order that granted the plaintiff's motion to compel. The defendant's motion for a protective order was denied with leave to renew in light of the fact that the defendant had not filed the proper documentation—i.e., a "privilege log"—to support its motion. Accordingly, the defendant has now renewed its motion for a protective order.

## II. DISCUSSION

Pursuant to the Federal Rules of Civil Procedure, a party is entitled to "obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action...." Fed. R.Civ.P. 26(b)(1) (emphasis added). The defendant argues that the bulk of the documents that are the subject of this motion are in fact protected by either the work product doctrine and/or the attorney-client privilege. Furthermore, the defendant argues that its insurance manuals are not relevant to this action and are also protected from discovery as trade secrets.

In order to assist this Court in resolving the current discovery dispute, the defendant has, in its renewed motion, provided a detailed "privilege log" pertaining to the subject documents. Moreover, the defendant has provided copies of the documents to this Court to be reviewed in camera. For the following reasons, this Court now concludes that the subject documents are not discoverable and that the defendant's motion shall be granted.

### A. Work Product Doctrine

In the seminal case of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the United States Supreme Court developed what is now known as the work product doctrine. In *Hickman,* the Court created a limited immunity from discovery for the written statements, private memoranda, and personal recollections prepared by an adverse party's counsel in anticipation of litigation. Currently, this doctrine has been codified in Federal Rule of Civil Procedure 26(b)(3) and has also been expanded by protecting the work product of a party, his agents and representatives, as well as that of the party's attorney. Rule 26(b)(3) provides in pertinent part:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... *only* upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3) (emphasis added).

The defendant claims that most of the documents in question are protected under Rule 26(b)(3) because they were prepared by it in anticipation of litigation. The plaintiff, however, argues that these documents were not produced in anticipation of litigation. In particular, the plaintiff points to the fact that the defendant did not deny his claim for loss until October 20, 1994, approximately sixteen months after the loss. The plaintiff also contends that even if some or all of the documents should be afforded work product protection, disclosure would still be required under the compelling need exception to Rule 26(b)(3).

### 1. Anticipation of Litigation

■ The general rule for determining whether a document was prepared in anticipation of litigation is whether the document can fairly be said to have been prepared or obtained because of the prospect of litigation. *In re Grand Jury Proceedings,* 604 F.2d 798, 803 (3d Cir.1979) (quoting 8 Wright & Miller, Federal Practice and Procedure § 2024 at 198 (1970)). Thus, in a fairly recent decision

involving a claim for work product protection, the Third Circuit explained that

> [o]nly by looking to the state of mind of the party preparing the document or, as here, the party ordering preparation of the document, can we determine whether this test has been satisfied. Thus, that person's "unilateral belief" that litigation will result is the initial focus of the inquiry into whether the report was prepared "in anticipation of litigation." The rule is limited, however, by the requirement that the preparer's anticipation of litigation be objectively reasonable.

*Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1260 (3d Cir.1993).

Whereas insurance companies are required to evaluate the claims made by one of its insureds, discovery disputes involving an insurance company's claims file often present problems for the parties. At some point in its investigation, however, an insurance company's activity shifts from mere claims evaluation to an anticipation of litigation. *Carver v. Allstate Ins. Co.,* 94 F.R.D. 131, 134 (S.D.Ga.1982).

 In the present case, this Court must determine whether the defendant's work product claim is objectively reasonable based upon the nature of the document(s) and the facts of this particular case. *See Martin,* 983 F.2d at 1260. Upon reviewing the contents of the documents in camera, and after evaluating the unique circumstances surrounding this matter, this Court concludes that as of July 1, 1993, the defendant did reasonably anticipate that litigation would occur. Thus, the documents that are listed in the defendant's "privilege log" under the work product doctrine, with the exception of two documents,[2] qualify for protection.

### 2. *Substantial Need*

 Despite qualifying for protection under the work product doctrine, the plaintiff may still obtain discovery of these docu-

ments. Pursuant to Rule 26(b)(3), the plaintiff has the burden of establishing a substantial need for the materials in question. Fed. R.Civ.P. 26(b)(3). In this case, the plaintiff argues that it needs the materials to prepare its case, particularly the bad faith claim against the defendant. This Court, however, has reviewed these documents in camera and finds no evidence of bad faith. Moreover, the plaintiff has had the ability to conduct discovery, which included taking the depositions of the defendant's agents, in order to substantiate its claims. The plaintiff, therefore, has had alternate means by which to obtain the "substantial equivalent" of the information contained in these documents. Accordingly, the subject documents shall remain protected under the work product doctrine.

### B. *Attorney Client Privilege*

In addition to the work product doctrine, the defendant has identified thirty-five (35) documents that it asserts are protected only by the attorney-client privilege. In order to facilitate ruling on the privilege claim, this Court further categorized the subject documents into three groups: (1) communications from the client to the attorney; (2) communications from the attorney to the client; and (3) communications regarding invoices.

Federal courts sitting in diversity jurisdiction must apply state substantive law with regard to attorney-client privilege. Fed. R.Evid. 501; *Eastern Technologies, Inc. v. Chem–Solv., Inc.,* 128 F.R.D. 74, 76 (E.D.Pa. 1989). In Pennsylvania, the privilege is governed by 42 Pa.Cons.Stat.Ann. § 5928, which provides: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S.A. § 5928.

---

**2.** The first two documents listed in the "privilege log" do not qualify for protection since they were prepared, at least in part, before July 1, 1993. The "Property Loss Notice" was prepared on June 30, 1993, and must be disclosed in its entirety. The claim evaluation sheets prepared

by W. Howe have several notations that were made prior to July 1, 1993. This document shall be disclosed with the appropriate portions—i.e., the notations made on and after July 1, 1993— redacted.

■ Pennsylvania's statute has also been interpreted as embracing as privileged "all confidential professional communications from the attorney to the client, to the extent that such communication is based on confidential facts disclosed to the attorney by the client." *In re Westinghouse Elec. Corp.,* 76 F.R.D. 47, 56 (W.D.Pa.1977); *see also Gregory v. Correction Connection, Inc.,* CA No. 88–7990, 1990 WL 182130 (E.D.Pa. Nov. 20, 1990); *Becker v. E.I. Du Pont De Nemours & Co.,* CA No. 87–6866, 1988 WL 54022 (E.D.Pa. May 25, 1988). Moreover, the statute is essentially a codification of the common law attorney-client privilege. *Eastern Technologies, Inc.,* 128 F.R.D. at 77; *Cedrone v. Unity Sav. Ass'n,* 103 F.R.D. 423, 426 (E.D.Pa.1984). In order to invoke the attorney-client privilege, however, the party resisting discovery must show the following:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

**3.** These documents include the following: (1) a letter from Phil Jacque to Michael Nelson, Esq. (dated 8/3/93); (2) a letter written by W. Howe to Michael Nelson, Esq. (dated 11/8/93); (3) a letter written by John McGinnis to Michael Nelson, Esq. (dated 2/18/94); and (4) a letter written by John McGinnis to Michael Nelson, Esq. (dated 2/10/95).

**4.** These documents include the following: (1) a letter written by Michael Nelson, Esq. to W. Howe (dated 7/22/93); (2) a letter written by Michael Nelson, Esq. to W. Howe (dated 7/26/93); (3) a letter written by Michael Nelson, Esq. to Phil Jacque (dated 8/9/93); (4) a letter written by Michael Nelson, Esq. to W. Howe and Phil Jacque (dated 8/13/93); (5) a letter written by Michael Nelson, Esq. to W. Howe (dated

*Rhone–Poulenc Rorer Inc. v. The Home Indemnity Co.,* 32 F.3d 851, 862 (3d Cir.1994) (citations omitted).

**1. Communications from the Client to the Attorney**

The defendant has identified four documents that were written by an agent of the defendant to its attorney.[3] Upon reviewing these documents, this Court finds that all of the required elements of the privilege have been satisfied. Accordingly, these four documents are not discoverable.

**2. Communications from the Attorney to the Client**

■ The defendant has also identified thirteen (13) documents written by the attorney to the defendant.[4] As previously mentioned, Pennsylvania's privilege statute has been interpreted to include communications from an attorney to the client. *Cf. Truck Ins. Exchange v. St. Paul Fire & Marine Ins. Co.,* 66 F.R.D. 129 (E.D.Pa.1975). In order for a communication from an attorney to a client to be privileged, however, the communication must at least be based upon confidential communications received from the client. *Becker,* 1988 WL 54022 at *1. In other words, the communication will not be privileged if the attorney is merely conveying facts acquired from persons or sources other than the client. *Id.*

In the present matter, this Court finds that four (4) of the documents identified by the defendant as communications from the attorney to the client are in fact discoverable.[5] These four documents do not contain

8/31/93); (6) a letter written by Michael Nelson, Esq. to W. Howe (dated 10/4/93); (7) a letter written by Michael Nelson, Esq. to W. Howe (dated 10/18/93); (9) a letter written by Michael Nelson, Esq. to W. Howe and John McGinnis (dated 4/21/94); (9) a letter written by Michael Nelson, Esq. to Charles Crusmire and Charles Farrington (dated 5/13/94); (10) a letter written by Michael Nelson, Esq. to John McGinnis (dated 6/6/94); (11) a letter written by Michael Nelson, Esq. to John McGinnis (dated 6/6/94); (12) a letter written by Michael Nelson, Esq. to John McGinnis (dated 6/13/94); and (13) a letter written by Michael Nelson, Esq. to John McGinnis (dated 6/7/95).

**5.** These four documents include the following: (1) a letter written from Michael Nelson, Esq. to

confidential information received from the client, but merely describe/convey information gathered from outside sources. Accordingly, these documents are not protected by the attorney-client privilege. Upon reviewing the remaining documents in this category, however, this Court finds that these documents do contain confidential information obtained from the client and are, therefore, privileged.

### 3. *Communications Regarding Invoices*

 Finally, the defendant has also identified eighteen (18) documents that relate to invoices.[6] This Court has recognized that billing statements and time records are generally protected by the attorney-client privilege, but only to the extent that they reveal litigation strategy and/or the nature of the services provided. *See Vanguard Savings & Loan Assoc. v. Banks,* CA No. 93–4627, 1995 WL 555871 (E.D.Pa. Sept. 18, 1995); *Leach v. Quality Health Servs.,* 162 F.R.D. 499 (E.D.Pa.1995). In others words, billing statements or time records are privileged if they reveal client communications. *Id.*

In this case, this Court finds that all of the documents identified by the defendant in this category are in fact discoverable. These documents merely contain the names of various agents employed by the defendant and the amounts owed for services rendered. These documents do not contain confidential communications from the defendant and do not reveal the nature of the services provided by

the defendant's agents. Thus, these materials are not privileged.

### C. *Insurance Manuals*

 Finally, the defendant has also renewed its motion to protect its claims/underwriting manuals. The defendant argues that these materials are not relevant to the subject matter of this action and are also protected from discovery as trade secrets.

 Upon reviewing the defendant's renewed motion to protect its internal standards, this Court agrees that these materials are not discoverable. The plaintiff's claims in this case are based upon the actions of the defendant and its employees in handling the plaintiff's claim for loss. The contents of these manuals do not pertain to whether the plaintiff's present claim for loss is "covered" under the insurance contract issued by the defendant. Moreover, the fact that the defendant may have strayed from its internal procedures does not establish bad faith on the part of the defendant in handling the plaintiff's loss. As previously mentioned, the plaintiff has had the opportunity to depose the defendant's employees that were actually involved with the claim.

W. Howe and Phil Jacque (dated 8/13/93); (2) a letter written from Michael Nelson, Esq. to W. Howe (dated 8/31/93); (3) a letter written from Michael Nelson, Esq. to W. Howe and John McGinnis (dated 4/21/94); and (4) a letter written from Michael Nelson, Esq. to John McGinnis (dated 6/6/94).

**6.** These documents include the following: (1) a letter written by Michael Nelson, Esq. to W. Howe (dated 10/5/93); (2) a letter written by Michael Nelson, Esq. to W. Howe (dated 10/14/93); (3) a letter written by Michael Nelson, Esq. to W. Howe (dated 11/1/93); (4) a letter written by Michael Nelson, Esq. to W. Howe (dated 11/17/93); (5) a letter written by Michael Nelson, Esq. to Phil Jacque (dated 11/29/93); (6) a letter written by Michael Nelson, Esq. to W. Howe (dated 12/13/93); (7) a letter written by Michael Nelson, Esq. to Phil Jacque (dated 2/2/94); (8) a letter written by Michael Nelson, Esq. to W. Howe (dated 2/21/94); (9) a letter written by Michael Nelson, Esq. to W. Howe (dated 4/5/94); (10) a letter written by Michael Nelson, Esq. to W. Howe (dated 5/13/94); (11) a letter written by Michael Nelson, Esq. to W. Howe (dated 6/15/94); (12) a letter written by Michael Nelson, Esq. to W. Howe (dated 6/16/94); (13) a letter written by Michael Nelson, Esq. to W. Howe (dated 7/29/94); (14) a letter written by Michael Nelson, Esq. to W. Howe (dated 8/17/94); (15) a letter written by Michael Nelson, Esq. to W. Howe (dated 8/19/94); (16) a letter written by Michael Nelson, Esq. to W. Howe (dated 12/12/94); (17) a letter written by Michael Nelson, Esq. to John McGinnis (dated 2/16/95); and (18) a letter written by Michael Nelson, Esq. to W. Howe (dated 5/25/95).