Joseph **MARTELLA** and Jacqueline
Martella, Petitioners

v.

**DEPARTMENT OF
TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 11, 2003.
Decided Jan. 26, 2004.
As Amended Jan. 29, 2004.

Caram J. Abood, Johnstown, for peti-
tioners.

Audrey Feinman Miner, Harrisburg, for
respondent.

BEFORE: LEADBETTER, Judge,
LEAVITT, Judge, and JIULIANTE,
Senior Judge.

OPINION BY JUDGE LEAVITT.

Joseph and Jacqueline Martella (Peti-
tioners) petition for review of an adjudica-
tion of the Pennsylvania Department of
Transportation (PennDOT) denying Peti-
tioners' request for documents under the
law commonly known as the RIGHT–to–
Know Law.[1] PennDOT held that the docu-

1. Act of June 21, 1957, P.L. 390, *as amended* by the Act of June 29, 2002, P.L. 663, 65 P.S. §§ 66.1–66.9.

ment sought by Petitioners was not a public record and, further, Petitioners' exceptions did not present their claim with sufficient detail, as required by the Right–to–Know Law. We review PennDOT's adjudication against the newly enacted amendments to the Right–to–Know to Know Law.[2]

Petitioners own a pharmacy on Franklin Street in Johnstown, Pennsylvania. The pharmacy is adjacent to a site where the Conemaugh Memorial Medical Center (the Medical Center) has proposed the construction of a parking lot. On April 22, 2003, Petitioners' counsel, Caram J. Abood, sent a letter to PennDOT's Acting District Engineer, Ronald L. Samuel (Samuel), requesting information about a meeting held on January 8, 2003 between representatives from PennDOT and the Medical Center. Petitioners believed that the meeting involved the proposed parking lot.

By letter dated May 7, 2003, Samuel responded to the request explaining that,

The meeting to which you refer was an impromptu meeting to gain general information on what may be required should the construction of the parking garage be pursued. Because this meeting was conceptual in nature, no decisions were made on any final configuration; however, general traffic flow issues were identified and possible options to mitigate the impact were discussed. It was noted that any changes in current configuration of the highway, including possible parking changes, would need to be coordinated with the City of Johnstown. No formal minutes were taken at the meeting; however, a Highway Occupancy Permit Application has been submitted and a full review of the application will be conducted.

Reproduced Record, R.R. 4a (R.R. ——). Samuel noted that if Petitioners wished to review the Highway Occupancy Permit Application (Application), it could make a request under the Right–to–Know Law. The letter enclosed instructions on how to pursue a Right–to–Know Law claim.[3]

On May 14, 2003, Petitioners requested[4] a photocopy of the Application from PennDOT, and on June 3, 2003, PennDOT, by its RTKL Official, denied Petitioner's request.[5] The RTKL Official reasoned that the Application is not a public record, as

---

2. Act of June 29, 2002, P.L. 663.

3. Section 2 provides that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. § 66.2.

4. Section 2(c) provides, in part, that a "written request shall be addressed to the agency head or other person designated in the rules established by the agency." 65 P.S. § 66.2(c). PennDOT has designated a Right–to–Know to Know Law (RTKL) Official for considering requests for public records in its custody.

5. Section 3.3(c) provides,
(c) Denial. If a Commonwealth agency's response is a denial of a written request for access, whether in whole or in part, a written response shall be issued and include:
(1) A description of the record requested.

(2) The specific reasons for the denial, including a citation of supporting legal authority. If the denial is the result of a determination that the record requested is not a public record, the specific reasons for the agency's determination that the record is not a public record shall be included.
(3) The typed or printed name, title, business address, business telephone number and signature of the public official or public employee on whose authority the denial is issued.
(4) Date of the response.
(5) The procedure to appeal the denial of access under this act.
65 P.S. § 66.3–3(c).

defined in the Right–to–Know to Know Law,[6] because PennDOT had not yet made a decision to grant or deny the Application.

▐ Thereafter, on June 5, 2003, Petitioners, through counsel, filed exceptions with PennDOT[7] stating

The reasons I file Exceptions are that I consider the Highway Occupancy Permit Application a public record, and one that affects the economic welfare of my client. Also, there was a meeting held with representatives of the Department of Transportation and the architect/engineer for [the Medical Center], and my clients were not a part of that meeting. It was indicated that there were no minutes taken at that meeting, but, in fact, there were, and I have a copy of same. Thus, this meeting must have been a meeting of substance, and I want a copy of the Application.

6. Section 1 defines "public record," in relevant part, as,

[a]ny account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, *order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons* . . . .
65 P.S. § 66.1 (emphasis added).

7. Section 3.5(a) provides,

(a) Filing of exceptions. If a written request for access is denied or deemed denied, the requestor may file exceptions with the head of the agency denying the request for access within 15 business days of the mailing date of the agency's response or within 15 days of a deemed denial. *The exceptions shall state the grounds upon which the requester asserts that the record is a public record and shall address any grounds stated by the agency for delaying or denying the request.*
65 P.S. § 66.3–5(a) (emphasis added).

8. PennDOT has designated a RTKL Exceptions Official to consider challenges to a deni-

The impact of that Application could severely affect my client's business which is adjacent to the subject proposed parking lot, and therefore, I believe he is entitled to have that.

R.R. 13a. On June 25, 2003, the PennDOT Exceptions Official[8] affirmed the May 14, 2003 decision of PennDOT's RTKL Official, explaining that Petitioners' exceptions failed to

set forth the reasons why the identified record is a public record, nor has he explained why he disagrees with the reasons set forth in [the official's] letter. . . . Moreover, the exceptions do not explain how the requested record meets the general definition of a 'public record.'

R.R. 21a–22a. Petitioners then sought this Court's review.[9]

al made by PennDOT's RTKL Official. Section 3.5(b) provides that
The agency head or his designee shall make a final determination regarding the exceptions within 30 days of the mailing date of the exceptions. . . . The determination shall be the final order of the agency. . . .
65 P.S. § 66.3–5(b).

9. Section 4 provides that "[w]ithin 30 days of the mailing date of a final determination of a Commonwealth agency affirming the denial of access, a requester may file a petition for review . . . with the Commonwealth Court." 65 P.S. § 66.4. Prior to the General Assembly's 2002 amendments to the Law, this Court's scope of review was whether the denial of access to public records was for just cause. *Tribune–Review Publishing Company v. Department of Community and Economic Development,* 814 A.2d 1261, 1263 n. 2 (Pa. Cmwlth.2003). However, when the General Assembly amended the Law, it omitted the just cause standard. *See* 65 P.S. § 66.4. In the absence of a scope of review from the General Assembly and because this is an appeal from an administrative agency, we will apply the standard set forth in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Thus, our standard of review is whether constitutional rights have been vio-

■ On appeal, Petitioners contend that PennDOT erred because the Application constitutes a public record. PennDOT counters that Petitioners have waived this issue because their exceptions failed to comply with the Right–to–Know to Know Law and the procedures adopted for considering requests for public records.

The General Assembly's recent amendments to the Right–to–Know to Know Law have established procedures that must be followed when appealing an agency's initial denial of a request for a public record. Section 3.5(a) provides that if a written request for access is denied, exceptions may be filed with the agency head. 65 P.S. § 66.3–5(a). "The exceptions *shall* state the grounds upon which the requester asserts that the record is a public record and *shall* address any grounds stated by the agency for delaying or denying the request." *Id.* (emphasis added). Section 3.5 does not give the agency the express authority to deny exceptions that are facially inadequate. However, Section 8 of

the Right–to–Know to Know Law,[10] 65 P.S. § 66.8, authorizes, and requires, agencies to establish written policies and regulations for the handling of requests for public records. PennDOT's Right–to–Know to Know procedures, *inter alia,* provide as follows: [11]

> Exceptions should address the reasons for denying the request. *Exceptions that fail to comply* with this requirement *may be dismissed* for that reason.

PennDOT Policy, Exceptions, 7(c)(2) (emphasis added).

■ Here, Petitioners' exceptions did not address why the Application is a public record as required in Section 3.5(a) of the Right–to–Know to Know Law, 65 P.S. § 66.3–5(a); Petitioners merely stated in a conclusory fashion that they "consider the Highway Occupancy Permit Application a public record." R.R. 13a. Further, Petitioners' exceptions did not address the stated grounds for PennDOT's initial denial, as required by 3.5 of the Right–to–Know Law, 65 P.S. § 66.3–5(a).[12] It has

---

lated, whether an error of law has been committed or whether findings of fact are supported by substantial evidence. *Id.*

10. Section 8 provides,

> (a) Requirement. An agency shall establish written policies and may promulgate regulations necessary to implement this act.
> (b) Content. The written policies shall include the name of the office to which requests for access shall be addressed and a list of applicable fees.
> (c) Prohibition. A policy or regulations may not include any of the following:
> (1) A limitation on the number of public records which may be requests or made available for inspection or duplication.
> (2) A requirement to disclose the purpose or motive in requesting access to records which are public records.
> (d) Posting. The policies shall be conspicuously posted at the agency and may be made available by electronic means.

65 P.S. § 66.8.

11. PennDOT's procedures for implementing the Right–to–Know Law are available on PennDOT's webpage. Although the published policy does not specifically address the content of exceptions, it does refer to the Right–to–Know to Know Law and Commonwealth of Pennsylvania Management Directive 205.36 as the basis for its policy. The Management Directive provides that exceptions that do not follow the policy may be dismissed. Further, in its letter of June 3, 2003, PennDOT gave specific directions on this point:

> Your written exceptions *must* state the reasons why you claim that each identified record is a public record for purposes of the Right–to–Know to Know Act. Your written exceptions also *must* explain why you disagree with the reasons set forth in this letter for denying your request.

R.R. 12a (emphasis added).

12. *See Commonwealth v. Sojourner,* 513 Pa. 36, 41–42, 518 A.2d 1145, 1148 (1986) ("The word 'shall' as used in a statute is generally

been explained that the purpose of exceptions in a judicial proceeding is to point out mistakes of fact or law so that the trial judge has an opportunity to correct them before an appeal is lodged. *In re Borough of Churchill,* 525 Pa. 80, 90, 575 A.2d 550, 555 (1990); STANDARD PENNSYLVANIA PRACTICE 2d § 56:21 (1999). The purpose of the exceptions provided in The Right to Know Law appears identical to that for exceptions in judicial proceedings. Properly presented exceptions will allow the agency to correct its errors thereby obviating the need for an appeal.[13]

■ The exceptions of Petitioners failed to point out mistakes of fact or law made by the RTKL Official. On that basis alone, PennDOT's Exceptions Official could have dismissed Petitioners' exceptions in accordance with the procedures PennDOT has adopted and made available to the public by electric means. However, PennDOT decided Petitioners' exceptions on the merits. It considered the question of whether the Application was a public record under the Right–to–Know Law and concluded that it was not. We agree.

Section 2 of the Right–to–Know to Know Law provides that public records shall consist of the following two categories: (1) an account, voucher or contract, and ·(2) a minute, order or decision.[14] The first category deals with the fiscal aspects of governance, and the second relates to agency decisions which fix rights and duties of citizens. *North Hills News Record v. Town of McCandless,* 555 Pa. 51, 55–56, 722 A.2d 1037, 1039 (1999).

Here, the Application sought by Petitioners does not deal with fiscal governance; it is not an account, voucher, agency contract, minute or order. Because the Application has not been approved, it is not a decision fixing the personal or property rights of a person. *See Tribune–Review Publishing Company v. Department of Community and Economic Development,* 814 A.2d 1261, 1264 (Pa.Cmwlth. 2003) (holding that unfunded grant applications are not subject to public disclosure under the Right–to–Know to Know Law because no evidence existed to prove that the applications were essential components of an agency decision; or that the agency acted on the applications; or that the applications formed the basis for a decision to fund other grant applications). In short, the Application is not a public record.[15]

---

regarded as mandatory, *i.e.,* imposing a duty upon the party to whom the statute is directed."). Every statute shall be construed, if possible to give effect to all of its provisions. 1 Pa.C.S. § 1921(a). The legislature is presumed not to have intended provisions of its enactments to be mere surplusage. *Masland v. Bachman,* 473 Pa. 280, 291, 374 A.2d 517, 523 (1977); *Bamber v. Lumbermens Mutual Casualty Co.,* 451 Pa.Super. 548, 680 A.2d 901, 904 (1996).

**13.** This is also the purpose of the exceptions procedures set forth in the General Rules of Administrative Practice and Procedure, 1 Pa. Code §§ 35.211–35.214. Notably, the effect of a failure to file timely exceptions will be deemed a waiver to objections to a proposed report of the hearing officer. 1 Pa.Code § 35.213. By analogy, PennDOT argues that

Petitioners failure to file timely and complete exceptions constituted a waiver of objections to the RTKL Official's decision.

**14.** *See supra* n. 6.

**15.** Petitioners contend that "denying disclosure of this record violates the purpose of the [Law], which is to·scrutinize acts of public officials and make officials accountable in their use of public funds." Petitioners' Brief, 9. Petitioners assert that if they "are only able to gain access to the Application after a decision is made, they are deprived of any ability to provide information or object to the changes." Petitioners' Brief, 10. However, Petitioners are not aggrieved until such a decision is made. If PennDOT grants the Application, then Petitioners can protest its approval, assuming they can prove standing.

Accordingly, we affirm the decision of PennDOT to deny the exceptions of Petitioners for the reasons stated therein.

## ORDER

AND NOW, this 26th day of January, 2004, the order of the Pennsylvania Department of Transportation dated June 25, 2003 in the above-captioned matter is hereby affirmed.