975 A.2d 591

**Beverly J. SCHENCK, Appellant**

v.

**TOWNSHIP OF CENTER, BUTLER COUNTY,**
**Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 10, 2007.

Re–Submitted Aug. 14, 2008.

Decided July 22, 2009.

Robert F. Hawk, Esq., Butler, for Beverly J. Schenck.

Teri L. Henning, Esq., Harrisburg, for amicus curiae Pennsylvania Newspaper Association.

Michael D. Gallagher, Esq., for Butler County Solicitor.

Manning James O'Connor II, Esq., Leech Tishman Fuscaldo & Lampl, L.L.C., Douglas Carlson Hart, Esq., Pittsburgh, for Center Township.

Michael J. Witherel, Esq., Witherel & Associates, Pittsburgh, for Pennsylvania Municipal Authorities Association.

Thomas L. Wenger, Esq., Peter Grayson Howland, Esq., Wix, Wenger & Weidner, P.C., Harrisburg, for Pennsylvania State Association of Township Supervisors.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *ORDER*

PER CURIAM.

**AND NOW,** this 22nd day of July, 2009, the appeal is dismissed as improvidently granted.

Justice SAYLOR files a dissenting statement in which Chief Justice CASTILLE joins.

Justice SAYLOR, dissenting.

At issue in this appeal is whether the public's right of access to invoices for attorney services paid for by the public may be defeated upon a mere blanket assertion of privilege. Given that the policy in the right-to-know landscape is rooted in promoting openness in government and the accessibility of information to the public, and because this Court is charged with the obligation of rendering reasoned decisions in light of such policy, I believe a more evaluative assessment of the claim of privilege is required.

In July 2003, Beverly Schenck ("Appellant") sent to the Board of Supervisors of Center Township a written request for copies of itemized invoices from its solicitor for the period of December 2002 to 2003, pursuant to the Pennsylvania Right to Know Act.[1] The request included bills associated with Appellant's litigation against four members of such board, on which Appellant had previously served. *See Schenck v. Erie,* *slip op.* MSD 02–40329 (C.P. Butler Nov. 20, 2002), *aff'd,* 862 A.2d 757 (Pa.Cmwlth.2004) (*per curiam*). The Township provided Appellant with the requested invoices but, with respect to those reflecting litigation-related work, it redacted all descriptions of the legal services rendered.[2] The solicitor

---

1. Act of June 21, 1957, P.L. 390 (codified as amended at 65 P.S. §§ 66.1–66.9) (the "Right to Know Act" or the "Act"). The Act recently has been supplanted on a prospective basis by a new public disclosure law, titled the Right–to–Know Law, applying to records requests made after December 31, 2008. *See* Act of February 14, 2008, P.L. 6 (codified at 65 P.S. §§ 67.101–67.3104). While substantial changes have been made under the new Law, the underlying policy considerations remain the same—promoting governmental transparency by favoring disclosure and permitting public access to official information.

2. The unredacted portion of the invoices indicated the name of the case, the date the work was performed, the name of the responsible attorney,

explained that, pursuant to *LaValle v. OGC,* 564 Pa. 482, 769 A.2d 449 (2001), records reflecting attorney work product— embodying mental impressions, conclusions, opinions, memoranda, notes, legal research or legal theories, *see* Pa.R.C.P. No. 4003.3—do not qualify as public records. *See LaValle,* 564 Pa. at 495, 769 A.2d at 457. More broadly, the solicitor explained that pre-decisional, internal, deliberative aspects of agency decision-making are outside the scope of mandatory disclosure. *See id.* at 497, 769 A.2d at 458.

According to the solicitor, the services-rendered entries within his firm's litigation-related invoices "clearly set forth attorney work product, indicating what was researched or reviewed, who was consulted and what activities took place in the furtherance of the litigation matters." Letter from Michael D. Gallagher, Township Solicitor, to the Center Township Board of Supervisors (August 20, 2003). Further, the solicitor opined as follows:

> The purpose of the description of services on a municipal invoice is to inform the supervisors as to the progress and avenues explored in ongoing litigation and litigation related issues. This rather frank description of services permits the Supervisors to freely and openly discuss with counsel the exchange of ideas as to litigation and litigation issues. Otherwise, this firm's ability to adequately represent the Township would be diminished. Therefore, the disclosure of services rendered is also excluded from being a public record under the deliberative process privilege.

*Id.* Consistent with his conclusion that the services-rendered entries contained attorney-work-product and deliberative information, the solicitor determined that redaction was appropriate under Section 3.2 of the Act. *See* 65 P.S. § 66.3-2 (prescribing that, when "information which is not subject to access is an integral part of the public record and cannot be separated, the agency shall redact from the public record the information which is not subject to access, and the response

the time expended, the hourly rate charged, and the amount charged for each time increment.

shall grant access to the information which is subject to access").

Appellant filed exceptions to the partial denial of her request,[3] which the Board of Supervisors denied. The Board's decision reiterated that the descriptive entries were exempt from mandatory disclosure because they included references subject to the work-product and/or the deliberative-process privileges. The attorney-client privilege was also invoked in the decision as an additional basis supporting the denial.

Appellant then pursued judicial review in the common pleas court as authorized by the Right to Know Act. *See* 65 P.S. § 66.4. The Township moved for summary judgment, and, at argument on the motion, Appellant contended that the Township could not establish privilege without producing the unredacted attorney invoices for review. Without examining the unredacted material, however, the common pleas court accepted the Township's position that the services-rendered portions of the invoices constituted attorney work product, and therefore, awarded summary judgment in the municipality's favor. *See Schenck v. Township of Center,* No. A.D. 10992 of 2003, *slip op.* at 4 (C.P. Butler March 2, 2005) ("The Court finds the Defendant's claim that the description of services portion of the invoice contains mental impressions, case strategy and/or tactics of the Solicitor to be credible, and believes that such information is worthy of protection."). The common pleas court made particular note that the Township forthrightly had provided all other requested information. Further, the court commented that the redacted information was "particularly sensitive and worthy of protection from [Appellant's] request," given that she had been involved in litigation with several of the Township supervisors. *Id.* at 5.[4]

3. Under Section 3.2 of the Act, redaction is deemed a denial. *See* 65 P.S. § 66.3–2.

4. This reason, however, was facially unavailable as a basis for denial under the express terms of the Act. *See* 65 P.S. § 66.3–1 ("An agency may not deny a requester access to a public record due to the intended use of the public record by the requester.").

On appeal, a divided panel of the Commonwealth Court affirmed on different grounds. *See Schenck v. Township of Center,* 893 A.2d 849 (Pa.Cmwlth.2006). Initially, the majority recognized that the solicitor invoices bore all of the characteristics of public records. *See id.* at 853. The majority, however, focused its attention on another public disclosure law, the Sunshine Act,[5] which provides for broad public access to agency meetings. The majority took particular note that, under the Sunshine Act, an agency may conduct some of its business in closed executive sessions, where it may "consult with its attorney or other professional advisor regarding information or strategy in connection with litigation or issues on which identifiable complaints are expected to be filed." *Schenck,* 893 A.2d at 853–54 (quoting 65 Pa.C.S. § 708(a)(4)). Further, the majority observed that this litigation-related exception to public disclosure was not limited to attorney work product, but extended to all "information in connection with pending or impending litigation." *Schenck,* 893 A.2d at 854. Finding that the Right to Know and Sunshine Acts should be read *in pari materia,* because they relate to the same class of things, *see id.* at 853 (citing 1 Pa.C.S. § 1932(a)), the majority extended the Sunshine Act's litigation exception into the right-to-know setting. In the majority's view, a contrary approach would be untenable. *See id.* at 854 ("[I]t would be absurd if litigation information from the solicitor was protected the evening of a municipal meeting, but it could be accessed the next morning through a description of litigation-related legal services in an invoice."). In light of its broad reading of the Sunshine Act's litigation-related exception, the majority also concluded that "it is not necessary for someone to cull through each service described in each invoice searching for attorney work product." *Id.*

Judge Friedman authored the dissent, in which she differed with the majority's *in pari materia* approach to the Right to Know and Sunshine Acts. The dissent reasoned that the two statutes should not be read as one, because they apply to

5. Act of July 3, 1986, P.L. 388 (codified as amended at 65 Pa.C.S. §§ 701–716).

different subject matter and their application yields different results. In this regard, the dissenting opinion developed that the Sunshine Act "applies to official action and deliberations by a quorum of agency members and requires that the same take place at a public meeting," whereas the Right to Know Act applies only to "public records," which the statute defines to mean certain documents like "any account, voucher or contract dealing with the receipt or disbursement of funds ... and any minute, order or decision by an agency[.]" *Schenck,* 893 A.2d at 856 (Friedman, J., dissenting) (quoting 65 P.S. § 66.1) (emphasis deleted). The dissent recognized that an agency can meet in a private session to discuss matters protected by a privilege; however, it stressed that once public funds are expended, "regardless of whether the expenditure flows from deliberations in an executive session, documents reflecting that expenditure are public documents subject to access under the [Right to Know Act]." *Id.*

For these reasons, Judge Friedman would have limited the inquiry to whether the redactions reflected protected attorney work product. *See Schenck,* 893 A.2d at 857 (Friedman, J., dissenting) (citing *LaValle,* 564 Pa. at 497, 769 A.2d at 458). The dissent then focused on the difficulty in arriving at a judicial determination concerning privilege, which entails consideration of a mixed question of fact and law, without more specific information concerning the content of the redactions or *in camera* access to the unredacted documents. With reference to the approach taken by various federal courts, the dissent favored the application of an *in camera* review procedure to test a government agency's assertion of privilege. *See id.* at 858, 769 A.2d 449 (developing that "federal courts have repeatedly reviewed documents *in camera* when deciding claims that documents are protected from discovery under the attorney-client and/or work product privilege").[6] Finally, Judge Friedman observed that, in the context of a probate

6. In this regard, the dissent referenced *Valenti v. Allstate Insurance Company,* 243 F.Supp.2d 200 (M.D.Pa.2003); *Carter v. City of Philadelphia,* No. 97–4499, *slip op.* 2000 WL 632988 (E.D.Pa., May 5, 2000); and *Garvey v. National Grange Mutual Insurance Company,* 167 F.R.D. 391 (E.D.Pa.1996).

proceeding, *In re Estate of Wood,* 818 A.2d 568 (Pa.Super.2003), the Superior Court had instructed a trial court to review material *in camera* to determine if the work product privilege applied. She therefore indicated that she would remand the matter for an *in camera* review of the invoices, rather than accept the Township's assertion of privilege without further scrutiny. *See Schenck,* 893 A.2d at 858.

Presently, Appellant advances much of the reasoning developed by Judge Friedman and favors the application of an *in camera* review procedure. Further, she argues that the interpretation of the Commonwealth Court majority contravenes the purpose of the Right to Know Act and leads to an unreasonable result, namely, that all information from a solicitor, whether or not it flows from executive session or otherwise relates to litigation, is inaccessible simply because the subject of litigation is a permitted executive-session topic. Appellant also observes that the motivating force behind the preparation of attorney invoices is to secure payment, and therefore, attorney billing records are not likely to contain disclosures of confidential information or mental impressions, conclusions, or opinions in the nature of work product. *See Slusaw v. Hoffman,* 861 A.2d 269, 273 (Pa.Super.2004) (holding that attorney invoices were not privileged documents to the extent that they did not disclose confidential communications between client and lawyers). Further, she develops that the description-of-services entries are integral to the expenditure of public funds, thus supporting her presumptive right of access as a citizen. *See* Brief for Appellant at 18 (expressing difficulty believing that the solicitor "cannot submit a bill without divulging privileged information in the tiny space allotted for services rendered on his invoices[;] [s]urely, the solicitor was aware of the public's (the people who pay the bills) right to see generally what the solicitor did to earn his money"). The Pennsylvania Newspaper Association, as *amicus,* disfavors wholesale redaction of entries as inconsistent with the public's right to disclosure concerning expenditures and advocates shifting the burden to the government to substantiate claims of privilege. Additionally, it emphasizes that

the Sunshine Act's litigation-related exception is not absolute, as officials must nevertheless disclose general information regarding the reason for the executive session to demonstrate to the public that the closed session is legitimate. *See Reading Eagle Co. v. Council of City of Reading*, 156 Pa.Cmwlth. 412, 418, 627 A.2d 305, 308 (1993); *accord Schenck*, 893 A.2d at 858 n. 6 (discussing *Reading Eagle* as it relates to a governing body's obligations under the Sunshine Act).

In response, the Township stresses that it took seriously its obligations under the Right to Know Act and produced a substantial amount of information which, from its perspective, provided adequate disclosure concerning its expenditures of public funds. Further, it offers its support for the Commonwealth Court's *in pari materia* construction of the Act, as do its *amici*, the Pennsylvania State Association of Township Supervisors and the Pennsylvania Municipal Authorities Association. *See, e.g.*, Brief for Appellee at 9 ("The analogy between legal advice given at an executive session within the scope of the Sunshine Act and legal advice described in a lawyer's invoice is a solid one."). The Township also contends that the burden to demonstrate that information is within the scope of the Right to Know Act consistently rests with the requester and should not shift to a government body upon its assertion of privilege. In this regard, it urges that it should be accorded a presumption of good faith. *See Albert v. Lehigh Coal & Navigation Co.*, 431 Pa. 600, 610 n. 5, 246 A.2d 840, 845 n. 5 (1968) ("There is a *prima facie* presumption of the regularity of the acts of public officials which exists until the contrary appear[.]"). This, the Township asserts, obviates any need for *in camera* review by the courts, which would impose a substantial burden on the government. In any event, the municipality argues that courts simply are not authorized to undertake *in camera* review in the right-to-know setting as distinguished from the discovery context in adversarial litigation. The Association of Township Supervisors also stresses the important public purpose of shielding communications between an attorney and a public client under the Sunshine Act, with reference to the Commonwealth Court's explanation

that, "if ... litigation strategy, ... the amount of settlement offers or ... potential claims became public, it would damage the municipality's ability to settle or defend those matters and all the citizens would bear the cost of that disclosure." *Reading Eagle,* 156 Pa.Cmwlth. at 415, 627 A.2d at 307.

Prior to 2003, the Right to Know Act expressly centered the judicial review upon whether an agency's denial of a request for information was for "just and proper cause." [7] 65 P.S. § 66.4 (superseded); *accord Dynamic Student Servs. v. State Sys. of Higher Educ.,* 548 Pa. 347, 352, 697 A.2d 239, 242 (1997). In the 2002 amendments, however, the Legislature omitted this specific language from the statute. The Commonwealth Courts response, as reflected in *Martella v. Penn-DOT,* 841 A.2d 633 (Pa.Cmwlth.2004), was to invoke the general review standard pertaining to administrative adjudications under the Administrative Agency Law. *See id.* at 635 n. 9 (citing 2 Pa.C.S. § 704). In this case, since the Township is a local agency as opposed to a Commonwealth agency under the Administrative and Local Agency Laws, *see* 2 Pa.C.S. § 101 (definitions), the proper standard derives from the latter, 2 Pa.C.S. §§ 551–555, 751–754. Thus, since the common pleas court did not consider the appeal *de novo* as generally would be permitted by the Local Agency Law, *see* 2 Pa.C.S. § 754(a), the appellate courts will review for constitutional and procedural compliance, consistency with governing legal principles, and support by substantial evidence, *see* 2 Pa.C.S. § 754(b). Further, under the express terms of the Right to Know Act pertaining to judicial review, "[a] requester is entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 65 P.S. § 66.4(b).

It is well settled that, under the Right to Know Act, the party seeking access to government records bears an initial burden of establishing that the requested material possesses

7. The term "agency" was and is defined broadly under the Act to include political subdivisions. *See* 65 P.S. § 66.1.

the characteristics of a public record. *See LaValle*, 564 Pa. at 497, 769 A.2d at 458 (citing *North Hills News Record v. Town of McCandless*, 555 Pa. 51, 56, 722 A.2d 1037, 1039 (1999)). Nevertheless, this Court has also observed that an agency from which disclosure is requested serves both as the body adjudicating the request and the party withholding access. *See id.* at 497 n. 13, 722 A.2d 1037, 769 A.2d at 458 n. 13. This Court has also indicated that, where a requester has made a colorable claim that a record may contain information subject to disclosure pursuant to the Act, the agency should be required to provide sufficiently detailed information concerning the contents of the requested document to enable a reviewing court to make an independent assessment of whether it meets the statutory requirements for mandatory disclosure. *Id.* A contrary approach would undermine the courts' obligation in this regard and place an impossible burden on the requester in the broad range of cases, thus depriving citizens of a meaningful opportunity to challenge the government's claims.

It is largely undisputed that the attorney invoices at issue represent a form of voucher in the broad sense of the word, in that they are documentary records concerning transactions for which compensation was sought. Moreover, there is no doubt that such records were integrally connected with disbursement of public funds. Since the documents in general facially meet the definition of public records, *see* 65 P.S. § 66.1, Appellant met her initial burden. *See also Tribune–Review Publishing Co. v. Bodack*, 599 Pa. 256, 268, 961 A.2d 110, 117 (2008) ("Certainly, the public has an interest in monitoring how public officials use public property[.]"). Accordingly, under the principles developed in *LaValle*, it fell to the Township to provide adequate support for its assertion of privilege. *See LaValle*, 564 Pa. at 497 n. 13, 769 A.2d at 458 n. 13. The Township, however, has relied principally upon generalized representations concerning the overall nature of attorney billing records and anecdotal references to discrete aspects of the invoices, *see, e.g.*, Brief for Appellees at 8 ("[A]n invoice from a lawyer may contain a description of services

that identifies the advice given."), from which it attempts to extrapolate to justify the withholding of all service-description references. I find this approach to be insufficient.

In the first instance, not all billing records are the same. In this case, the solicitor's description of the use of billing records as a platform to exchange ideas and discuss litigation issues differs materially from the practice of other attorneys, who use billing records in a far more limited fashion, merely to justify payment for legal services rendered.[8] *See generally Weslaco Holding Co. v. Crain, Caton & James, P.C.*, Misc. No. H–07–0317, *slip op.*, 2007 WL 1746822, at \*2 ("The attorney work product doctrine is 'not an umbrella for materials assembled in the ordinary course of business.' " (citation omitted)). Moreover, in both the discovery and public disclosure settings, few courts have been willing to accept blanket assertions of privilege with respect to an entire category of information. *See generally von Bulow v. von Bulow*, 811 F.2d 136, 146 (2d Cir.1987) (refusing to sustain an assertion of privilege on the basis of "mere conclusory or ipse dixit assertions" (citation omitted)); *In re Grand Jury Subpoena (Legal Services Center)*, 615 F.Supp. 958, 964 (D.Mass.1985) (explaining that "blanket assertions of privilege ... are extremely disfavored" (citation omitted)); *In re Orange County Publ'ns, Inc. v. County of Orange*, 168 Misc.2d 346, 637 N.Y.S.2d 596, 603–04 (N.Y.Sup.Ct.1995).

Certainly, I agree with the Township's observation that government bodies should be afforded a presumption of good faith, but I am unable to recognize this presumption to the

---

**8.** *See, e.g., Hunterdon County Policemen's Benefit Ass'n Local 188 v. Township of Franklin*, 286 N.J.Super. 389, 669 A.2d 299, 302 (N.J.Super.1996) (expressing agreement with the sentiment that "[t]he billings of an attorney are not likely to contain information which is confidential[;][i]n the experience of this court, it will contain a few word description of the general category of work performed, the number of hours required to perform the work, the date of the performance, and the total cost to the client"); *Weslaco Holding Co. v. Crain, Caton & James, P.C.*, Misc. No. H–07–0317, *slip op.*, 2007 WL 1746822, at \*2 (S.D.Tex. June 15, 2007) ("While it is conceivable that attorney billing records could be so detailed as to include attorney-client or work product material, that is not the usual case and there is no indication that is the case here.").

extent the Township would like. The Legislature has determined that public disclosure of broad categories of government records is appropriate to foster confidence and trust among the citizenry. Further, as developed above, the Assembly also has charged the courts with the obligation to issue developed and reasoned decisions concerning challenges to a government body's compliance with such disclosure requirements. I believe the Court would be remiss in its obligation were it to accept broad-scale assertions of privilege of the sort relied upon by the Township. As explained by one commentator:

> To the extent that evidentiary support for the factual basis of the privilege is not forthcoming, the claim is little more than a bald, conclusory, or *ipse dixit* assertion. The court will deny such an assertion because it forecloses meaningful independent inquiry by the finder of facts (the judge) into the validity of the claim. . . . Although an attorney's word may be "taken on its face," a privilege claim is not self-executing. It requires more proof than a conclusion by the party asserting the claim (or his attorney) that it is justified.

P. Rice, *Attorney–Client Privilege in the United States* § 1:10, at 977–80 (Lawyers Coop.1993).[9]

For similar reasons, I would not accept the Township's argument that the differences between the discovery and right-to-know settings justifies differential treatment of privilege matters. In my view, the salutary purposes underlying the Right to Know Act are no less important than those pertaining to the civil-practice discovery scheme.

Concerning the Commonwealth Court's rationale, I agree that any information contained within the solicitor's invoices

9. *See also Commonwealth, Cabinet for Health & Family Serv. v. Scorsone,* 251 S.W.3d 328, 330 (Ky.App.2008) (rejecting a government agency's blanket redaction of all descriptive portions of disclosed attorney billing records without particularized demonstration that each is privileged, and stating, "like the Attorney General and the circuit court before us, we cannot imagine that each and every description of services rendered contained in [attorney] billing statements . . . falls under the attorney-client privilege"); *accord Chaudhry v. Gallerizzo,* 174 F.3d 394, 402 (4th Cir.1999) ("Typically, the attorney-client privilege does not extend to billing records[.]").

that discloses specific details regarding confidential communications from executive session may be withheld from disclosure under a reasonable *in pari materia* construction of the Right to Know and Sunshine Acts. There is no proof, however, that the entire services-rendered content of those invoices reflects the sort of information reserved for executive session, and, again, in light of the statutory requirements pertaining to judicial review, I am unable to accept assertions of an *ipse dixit* form. *Cf. In re Witnesses Before the Special March 1980 Grand Jury*, 729 F.2d 489, 495 (7th Cir.1984) ("Because the district court applied a blanket privilege to all fee information in this case, we have no way of knowing whether the documents subpoenaed in this case include privileged information."). Thus, I view the Commonwealth Court's approach as another form of an overarching justification for non-disclosure that is too remote from the discrete content of the attorney invoices at issue. *Cf.* 81 AM.JUR.2D WITNESSES § 395 (2009) ("All narrative statements in attorney fee statements are not per se privileged; rather, parties claiming the privilege will have to show its application to particular narrative statements in the billing records."). While I recognize the salutary effect of the Commonwealth Court's effort in terms of displacing the difficult responsibility for agencies and/or courts to cull through voluminous document entries, I find it to be too greatly in tension with the Act's requirements and purposes relating to public disclosure.[10]

In *LaValle*, this Court observed that there are at least several models that agencies may consider to provide sufficiently detailed information to afford a reasonable basis for citizens and courts to make independent judgments concerning the privileged nature of information that is to be withheld from disclosure. *See LaValle*, 564 Pa. at 498 n. 14, 769 A.2d at 459 n. 14 (citing *City of Colorado Springs v. White*, 967 P.2d 1042, 1053–54 (Colo.1998)). For the present, the Court has

10. Notably, the General Assembly amended the new Right to Know Law in favor of increasing public access, given that it begins with the presumption that all records held by state and local agencies are public and the burden of proving otherwise is on the agency denying access. *See* 65 P.S. § 67.305.

left it to the intermediate appellate and common pleas courts to tailor measures suitable to the wide variety of cases which they are charged to administer. *See id.* Here, I would merely hold that the Township's present effort was insufficient, and therefore, its non-disclosure of information within public records cannot be sustained on the grounds identified by it or the intermediate appellate and common pleas courts.

As to the availability of *in camera* review, I agree with the many jurisdictions that have had little difficulty recognizing the availability of such a procedure in the discovery and public disclosure arenas.[11] *Accord id.* ("We note . . . that sound policy would appear to support the availability of an *in camera* procedure, where appropriate[.]"). Having charged the courts with the obligation to render reasoned decisions in the right-to-know setting, I do not believe that the Legislature intended to deprive them of an accepted, and perhaps essential, tool of judicial review. I also agree, however, with the observation that *in camera* review may not be required where the government agency otherwise provides a sufficient basis for meaningful review and independent assessment. *See, e.g., White,* 967 P.2d at 1054 ("An in camera inspection of the disputed material need not automatically follow upon the claim of privilege.").

In summary, public disclosure laws favor governmental transparency and reflect a belief that non-disclosure undermines the relationship between a government and its citizens.

11. *See, e.g., Evening News Ass'n v. City of Troy,* 417 Mich. 481, 339 N.W.2d 421, 438 (Mich.1983) (adopting the federal Freedom of Information Act approach to determining whether material was subject to the Michigan analogue, MICH. COMP. LAWS. § 15.231 *et seq.,* including examination of documents *in camera* where necessary); *Loigman v. Kimmelman,* 102 N.J. 98, 505 A.2d 958, 966 (N.J.1986) (holding that, where appropriate, courts should undertake *in camera* review of material that an agency asserts is exempt from disclosure under the state common-law right to access public records); *accord Scorsone,* 251 S.W.3d at 330 (indicating, in the context of a statute that provides for *in camera* review: "We further find that the circuit court's decision to allow the Administration to tender those portions of the billing records it believes to be privileged for *in camera* review to be in accordance with the Open Records Act and an excellent device for balancing the Administration's interest in the confidentiality of privileged materials and the public interest in the disclosure of nonconfidential government records.").

562

More important, the Right to Know Act plainly demonstrates the Legislature's intention to promote openness in government and to protect the interest of the citizenry in discovering abuses. *See Bodack,* 599 Pa. at 269, 961 A.2d at 118 (Saylor, J. concurring). In light of such clear policy, and because this Court is responsible for fully implementing the express intentions of the Legislature, I would reverse the Commonwealth Court's decision.

Justice CASTILLE joins this dissenting statement.